EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel Luis Romero<br><br>Recurrido<br><br>v.<br><br>Jorge L. Reyes Rivera y su esposa Myriam Carrasquillo Santiago y la Sociedad Legal de Gananciales entre ellos constituida<br><br>Peticionarios | Certiorari<br><br>2005 TSPR 58<br><br>163 DPR ____ |

Número del Caso: CC-2000-559

Fecha: 28 de abril de 2005

Tribunal de Apelaciones:

                Circuito Regional VII de Carolina y Fajardo

Juez Ponente:

          Hon. Frank Rodríguez García

Abogado de la Parte Peticionaria:

              Lcdo. Rafael Angulo Rivera

Abogado de la Parte Recurrida:

              Lcdo. Wilfredo R. Picorelli Osorio

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel Luis Romero

    Recurrido

      v.

Jorge L. Reyes Rivera y su esposa Myriam Carrasquillo Santiago y la Sociedad Legal de Gananciales entre ellos constituida       CC-2000-559      Certiorari

    Peticionarios

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 28 de abril de 2005.

Jorge L. Reyes Rivera, Myriam Carrasquillo y la sociedad legal de gananciales compuesta por ambos comparecen mediante petición de certiorari solicitando la revocación, por falta de partes indispensables, de la sentencia dictada por el Tribunal de Primera Instancia que fue confirmada por el Tribunal de Apelaciones el 19 de mayo de 2000. En dicha sentencia, fechada 29 de diciembre de 1999, el Tribunal de Primera Instancia ordenó la anulación en el Registro de la Propiedad de los asientos provocados por la escritura de compraventa otorgada entre las partes, por determinar que dicho negocio fue simulado. Procedemos a resolver si el foro de instancia actuó correctamente al permitir que se enmendaran las alegaciones mediante el informe de la

conferencia con antelación al juicio y si debemos revocar la sentencia recurrida por entender que eran partes indispensables en el presente litigio el notario autorizante de la escritura de compraventa que el foro de instancia declaró simulada y el Western Federal Savings Bank, acreedor garantizado con hipoteca sobre el inmueble objeto del contrato de compraventa.

## I.

El 25 de agosto de 1995 el recurrido Ángel Luis Romero, presentó una demanda de cobro de dinero y reivindicación. En la demanda sólo se incluyeron como demandados a Jorge L. Reyes Rivera, su esposa Myriam Carrasquillo y la sociedad legal de gananciales compuesta por ambos (en adelante los peticionarios). Se alegó que los peticionarios le adeudaban a Romero parte de la suma acordada por concepto de la venta de un inmueble y que, por esta razón, dicha compraventa no se había consumado. Romero solicitó que se le ordenara a los peticionarios pagar la cantidad adeudada, los intereses acumulados, las costas del proceso y $10,000 de honorarios de abogado. En la alternativa, Romero alegó que era el dueño legítimo de la propiedad en controversia porque el contrato de compraventa no se había consumado y que, por lo tanto, procedía que se le entregara la finca.

El 20 de septiembre de 1995, los peticionarios contestaron la demanda negando todas las alegaciones. Adujeron como defensa afirmativa que era Romero quien le adeudaba dinero a los peticionarios y que en la escritura de compraventa el demandante había aceptado haber recibido la totalidad del precio pactado por el referido inmueble.    El 25 de noviembre de 1997, luego del proceso de descubrimiento de prueba, el Tribunal de Primera

Instancia celebró la conferencia con antelación al juicio y aprobó el informe sometido por las partes. Al aprobar el informe, el foro de instancia le permitió al demandante enmendar la demanda para añadir la siguiente alegación:

> En la alternativa se alega que la venta realizada entre las partes fue una simulada con el propósito de que se pagasen unas deudas y que posteriormente el título de dominio se pasaría por los demandados al demandante y este [sic] asumiría el pago de la hipoteca vigente. Los demandados se han negado a devolver el título y se lucran con las rentas que produce el inmueble.

Habiéndose celebrado el juicio en su fondo, el foro de instancia recibió prueba, sin objeción de la parte demandada, sobre dicha alegación y determinó que las partes habían llevado a cabo una venta simulada, con el propósito de que los peticionarios gestionaran el financiamiento necesario para obtener dinero para pagar las deudas del demandante. El Tribunal de Primera Instancia determinó en su sentencia los hechos que resumimos a continuación. Romero enfrentó problemas económicos que provocaron el embargo del inmueble. Por estar su crédito afectado, se vio impedido de obtener el financiamiento necesario para pagar sus deudas por lo que solicitó la ayuda de los peticionarios, Reyes y su esposa Myriam Carrasquillo, quien era prima de Romero, para llevar a cabo una venta simulada. El 28 de noviembre de 1990 las partes otorgaron la escritura de compraventa número 145 ante el notario José M. Biaggi Junquera. En ésta se hizo constar que el precio de venta de $210,000 se había pagado antes del referido acto. En esa misma fecha y ante el mismo notario, se otorgó la escritura número 146 de constitución de hipoteca sobre el inmueble objeto de la compraventa en garantía del préstamo concedido a los peticionarios. Según el Exhibit III ("Loan Settlement Statement") sometido por estipulación de las partes, el 29 de

noviembre de 1990, el Western Federal Savings Bank (en adelante el Banco) le concedió a los peticionarios un préstamo hipotecario por $157,000. Con el producto de ese financiamiento, los peticionarios saldaron las deudas de Romero y le entregaron a éste el remanente. Cabe señalar que después de haberse radicado el pleito, el 5 de octubre de 1998, los peticionarios refinanciaron la deuda.

En su sentencia, dictada el 29 de diciembre de 1999, el foro de instancia declaró con lugar la demanda, determinó que la compraventa celebrada entre las partes fue simulada y ordenó "la anulación en el Registro de los asientos que provocó tal escritura, de tal forma que el dominio del inmueble en ella descrito permanezca inscrito" a favor de Romero. Ordenó, además, que los peticionarios le entregaran a Romero la posesión del inmueble y le ordenó a éste pagar a los peticionarios la suma de $8,603.84 o lo que correspondiera a la diferencia entre las rentas cobradas y el pago de la hipoteca hasta la entrega del inmueble. Se le impuso a los peticionarios las costas del proceso y $1,500 en honorarios de abogados, por entender el foro de instancia que fueron temerarios al litigar este pleito.

Inconformes con la determinación del Tribunal de Primera Instancia, los peticionarios acudieron al Tribunal de Apelaciones y éste confirmó la sentencia recurrida. En consecuencia, acuden ante este Tribunal señalando que el foro apelativo erró (1) al no resolver que se viola el debido proceso de ley cuando se permite enmendar la demanda en el informe de conferencia con antelación al juicio; (2) al no resolver que el Notario que autorizó la escritura de compraventa y el Banco que era el acreedor hipotecario eran partes indispensables; (3) al imponerle honorarios de abogados a la parte demandada, cuando

la sentencia dictada obliga a la parte demandante a pagarle a ellos una suma de dinero.

Con el beneficio de la comparecencia de ambas partes expedimos el auto de certiorari. Por las razones que pasamos a exponer, revocamos la sentencia recurrida.


II.


La Regla 37.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 37 (2002), que regula los procedimientos de la conferencia con antelación al juicio, dispone como sigue:

> En cualquier pleito el tribunal podrá, en el ejercicio de su discreción, ordenar a los abogados de las partes que comparezcan a una conferencia para considerar: (a) la simplificación de las cuestiones litigiosas; (b) **la necesidad o conveniencia de enmendar las alegaciones**; … (f) cualesquiera otras medidas que puedan facilitar la más pronta determinación del pleito. El tribunal dictará una orden en que expondrá lo acordado en la conferencia, **las enmiendas que se hubieren permitido a las alegaciones** y las estipulaciones de las partes en relación con cualesquiera de los asuntos considerados y que limiten las cuestiones litigiosas a ser consideradas en el juicio, a aquellas no resueltas mediante admisiones o estipulaciones de los abogados; y dicha orden, una vez dictada, gobernará el curso subsiguiente del pleito, a menos que sea modificada en el juicio para impedir manifiesta injusticia. (énfasis nuestro).

Esta regla es consecuencia necesaria del principio básico de nuestro sistema procesal de garantizar una solución justa, rápida y económica. Su propósito es simplificar, reducir y hasta evitar el juicio si es posible. José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, Publicaciones JTS 620 (2000). Hemos señalado que la conferencia con antelación al juicio le ofrece a las partes la oportunidad para someter al tribunal posibles enmiendas a las alegaciones antes de la vista en su fondo. Ortiz Díaz v. R. & R. Motors Sales Corp., 131 D.P.R. 829, 837 (1992). Además, las enmiendas pueden ampliar una de las causas de acción

alegadas en la demanda original, añadir una o más causas de acción o plantear nuevas teorías. Cruz Cora v. UCB/Trans. Union P.R. Div., 137 D.P.R. 917, 923 (1995). Un cambio de teoría por sí sólo no es suficiente para denegar el permiso a menos que cause perjuicio al demandado. CUEVAS SEGARRA, *supra*, en la pág. 317.

Por otro lado, la Regla 13.1 de Procedimiento Civil permite a las partes enmendar sus alegaciones "una vez en cualquier momento antes de habérsele notificado una alegación respondiente". 32 L.P.R.A. Ap. III, R. 13.1 (2002). Posterior a ello sólo se podrá hacer "con permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; **y el permiso se concederá liberalmente cuando la justicia así lo requiera**". *Id.* (énfasis nuestro).

De ambas reglas se desprende que la decisión de permitir enmendar las alegaciones es discrecional del tribunal. Sin embargo, hemos establecido varios criterios para demarcar el ejercicio adecuado de dicha discreción. Estos son: (a) el momento en que se solicita la enmienda; (b) el impacto de la solicitud en la pronta adjudicación de la cuestión litigiosa; (c) la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda; (d) el perjuicio que la misma causaría a la otra parte; y (e) la naturaleza y méritos intrínsecos de la defensa que se plantea. Epifanio Vidal, Inc. v. Suro, 103 D.P.R. 793, 796 (1976). Por eso, si bien se ha estatuido la liberalidad como parámetro general para la concesión del permiso, dicha liberalidad no es infinita, sino que está condicionada por un juicioso ejercicio de discreción, que ha de ponderarse según los criterios antes mencionados. El principal de estos es el perjuicio que se le pueda causar a la otra parte al conceder la enmienda: "[n]o es permisible [sic] enmiendas a la demanda cuando se introducen nuevas y separadas

causas de acción o cuando hay incuria, mala fe o propósitos dilatorios, **causando perjuicio**". Cuevas Segarra, *supra,* en la pág. 321 (énfasis nuestro).

En el caso de autos el demandante enmendó sus alegaciones mediante el informe de la conferencia con antelación al juicio para alegar, como teoría alterna para recuperar el inmueble, que la compraventa celebrada con los peticionarios fue simulada. Según se desprende de la minuta preparada al celebrarse la conferencia con antelación al juicio, el foro de instancia aprobó dicho informe y, por consiguiente, la enmienda solicitada. Cabe señalar, que ni del informe ni de la minuta surge que los peticionarios hayan objetado a la enmienda propuesta. Nada en el expediente indica que los peticionarios hayan objetado a la enmienda solicitada y, mucho menos, que expresaran que ésta les perjudicaba.[1]

A la luz de los criterios que el tribunal debió considerar al ejercer su discreción es forzoso concluir que

el foro de instancia no erró al permitir la enmienda solicitada ni violó el debido proceso de ley de los peticionarios. La enmienda se solicitó en un momento apropiado, si consideramos que los peticionarios no alegaron perjuicio ni presentaron objeción alguna y que uno de los propósitos del informe con antelación al juicio es lograr un juicio justo, evitar dilaciones y considerar la necesidad de enmendar las alegaciones. Además, no se demostró falta de diligencia de parte del demandante ni demoras injustificadas que nos obliguen a

---

Además, la evidencia que se presentó en el juicio y que demostró la simulación de la compraventa a satisfacción del foro de instancia, no fue objetada oportunamente. Ello tuvo el efecto de enmendar las alegaciones conforme a lo dispuesto por la Regla 13.2 de Procedimiento Civil que dispone: "[c]uando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán a todos los efectos como si se hubieran suscitado en las alegaciones." 32 L.P.R.A. Ap, III, R. 13.2 (2002).

intervenir con la discreción del juez de instancia. Mediante la enmienda el demandante alegó que la venta fue simulada, lo cual tuvo el único efecto de incluir una nueva teoría. Según mencionáramos anteriormente, un cambio de teoría por sí sólo no es suficiente para denegar una solicitud de enmienda.

El debido proceso de ley "le impone al Estado la obligación de garantizar que la interferencia, con los intereses de libertad y de propiedad del individuo, se haga a través de un procedimiento que en esencia sea justo y equitativo". C.E.S. U.P.R. v. Gobernador, 137 D.P.R. 83, 109 (1994). En el caso de autos el juez de instancia actuó dentro del marco de su discreción para garantizar un procedimiento justo. No erró al permitir la enmienda solicitada.

III.

Examinemos ahora si el acreedor hipotecario y el notario que autorizó la escritura de compraventa que se declaró simulada por el foro de instancia, son partes indispensables en el presente litigio.

El mecanismo de acumulación de parte indispensable está regulado por la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.1 (2002), la cual dispone:

> Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.

Los tratadistas son contestes en que la interpretación de esta regla requiere de un enfoque pragmático, es decir, requiere de una **evaluación individual a la luz de las circunstancias particulares** que se presentan y no de una fórmula rígida para determinar su aplicación. Por lo tanto, los tribunales tienen que hacer un juicioso análisis que envuelva la determinación de

los derechos de un ausente y las consecuencias de no ser unido como parte en el procedimiento. Es importante determinar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente. 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1601, en las págs. 9-18 (2001); CUEVAS SEGARRA, *supra*, en la pág. 368. Cabe señalar que el "interés común" al que se hace referencia en la Regla 16.1 no es cualquier interés en el pleito, sino que tiene que ser de tal orden que impida la confección de un derecho sin afectarlo. *Id.*, en la pág. 369. Además, el interés afectado tiene que ser real e inmediato, al extremo de impedir la confección de un decreto adecuado ya que "[b]ajo la Regla 16.1 una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o **inevitablemente afectados** por una sentencia dictada, estando esta persona ausente del litigio". CUEVAS SEGARRA, *supra*, en las págs. 371, 375 (énfasis nuestro).

En diversas ocasiones hemos reiterado que la regla sobre acumulación indispensable de partes persigue el propósito de que la persona que no está presente quede protegida de los efectos legales de la sentencia y así evitar que se multipliquen los pleitos. Rodríguez Rodríguez v. Moreno Rodríguez, 135 D.P.R. 623, 627 (1994). La falta de parte indispensable constituye un planteamiento tan relevante y vital que puede presentarse en cualquier momento, es decir, puede presentarse por primera vez en apelación e incluso puede suscitarse "*sua sponte*" por un tribunal apelativo ya que en ausencia de parte indispensable, el tribunal carece de jurisdicción. Además, la omisión de traer a una parte indispensable al pleito constituye una violación al debido proceso de ley de dicho ausente. Hernández Agosto v. López Nieves, 114 D.P.R. 601, 625 (1983); Rodríguez Rodríguez v. Moreno Rodríguez, *supra*, en la pág. 625.

La Regla 16.1 busca evitar que la persona ausente se vea privada de su propiedad sin un debido proceso de ley y que el remedio adjudicado sea completo. Rodríguez Rodríguez v. Moreno Rodríguez, *supra*, en la pág. 624. Por lo tanto, de reconocerse que está ausente una parte indispensable, debe desestimarse la acción. Sin embargo, esta desestimación no tendrá el efecto de una adjudicación en los méritos con efecto de cosa juzgada. 32 L.P.R.A. Ap. III, R.39.2(c) (2002); Banco de la Vivienda de P.R. v. Carlo Ortiz, 130 D.P.R. 730, 737 (1992).

Aplicando los criterios antes esbozados, concluimos que el notario que autorizó la escritura simulada no es parte indispensable en este litigio. Ello es contrario a la situación del acreedor hipotecario, según explicaremos más adelante. Veamos.

El notario es el custodio de la fe pública notarial y le imparte veracidad, autenticidad y legalidad a los instrumentos públicos y notariales que autoriza. SARAH TORRES PERALTA, EL DERECHO NOTARIAL PUERTORRIQUEÑO 1.9 (1995). Por eso, hemos resuelto que, como tal: "Al autorizar un documento presuntivamente da fe pública y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima". In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986).

En el desempeño de su gestión notarial el abogado está obligado a cumplir  con los deberes que surgen de la ley, los Cánones de Ética Profesional y el contrato entre las partes. La inobservancia de esos deberes expone al notario a una posible acción en daños por los perjuicios causados y a nuestra jurisdicción correctiva y disciplinaria. In re Cruz Tollinche, 114 D.P.R. 205, 207 (1983). La responsabilidad civil del notario por los daños que cause la violación de sus deberes notariales

se extiende también a terceros que hayan sufrido daños por las actuaciones notariales del funcionario, en su función dual de asesoramiento y de instrumentador del documento. TORRES PERALTA, *supra*, en la pág. 1.38.

Respecto a la intervención de un notario en un negocio simulado hemos señalado anteriormente que:

> en tal situación se está atentando contra la propia naturaleza de lo que la fe notarial y pública representa en una sociedad que ha depositado confianza en manos de dicho funcionario ... la validez de los actos y documentos públicos no puede dejarse al arbitrio de una norma ética débil, y que la participación de un abogado como tal o como notario en negocios simulados es conflictiva con los mejores postulados de conducta que deben regir a los miembros de nuestra profesión de abogado y en su consecuencia ello de ordinario constituye suficiente base para el desaforo. In re Vélez, 103 D.P.R. 590, 599-600 (1975).

En Deliz Muñoz v. Igartúa Muñoz, res. el 23 de enero de 2003, 158 D.P.R. __ (2003), 2003 T.S.P.R. 4, resolvimos una controversia similar a la que nos ocupa. En ese caso se alegó que el notario que autorizó el testamento impugnado era parte indispensable. La alegación de nulidad se basaba en que el testamento no cumplía con las formalidades requeridas por el Código Civil. Resolvimos lo siguiente:

> Somos del criterio que para resolver esa controversia el notario Nolla Amado no resulta ser una 'parte indispensable'. Ello por razón de que en cualquier caso de esta naturaleza, en que efectivamente se decrete la nulidad absoluta de un testamento otorgado ante notario, dicha determinación necesariamente no conllevaría perjuicio para éste. Podría suceder que el perjudicado por dicha determinación judicial sobre nulidad testamentaria no radique acción judicial, en daños y perjuicios, contra dicho notario. Aun si así lo hiciera dicho perjudicado, éste, repetimos, tendría que demostrar que la falta en que incurrió el notario provino de su malicia o negligencia o ignorancia inexcusables. Deliz Muñoz v. Igartúa Muñoz, *supra*.

Concluimos entonces que el notario no es parte indispensable, "por razón de que el posible perjuicio o lesión, que pueda sufrir dicho notario no es uno real e inmediato siendo

el mismo, por el contrario, uno contingente, esto es, supeditado a que ocurran en el futuro una serie de eventos y circunstancias que, necesariamente, no tienen que darse". Deliz Muñoz v. Igartúa Muñoz, *supra* (citas omitidas).

Resulta evidente que en el caso de autos el notario no es parte indispensable en la acción para anular un contrato por simulación que éste autorizó, pues su interés en dicha controversia no es real e inmediato sino contingente a la consecuencia de la acción instada. El notario autorizante no se verá privado de su derecho al debido proceso de ley por no ser parte en la acción para anular el contrato, ya que su interés aún no se ha concretado y depende, por el contrario, de un sinnúmero de factores que podrán manifestarse, si acaso, luego de advenir final y firme la anulación del contrato por simulación. Incluso, de presentarse una acción disciplinaria o una acción civil contra el notario a raíz de dicha determinación, habrá que dilucidar si éste es responsable conforme a la normativa aplicable. Por lo tanto, en el caso de autos el notario no constituye una parte "sin cuya presencia no pueda dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos". Deliz Muñoz v. Igartúa Muñoz, *supra*.

Con respecto al banco acreedor hipotecario la situación es diferente. El contrato de hipoteca, como todo contrato, requiere para su validez que concurran los elementos esenciales de consentimiento, objeto y causa. 31 L.P.R.A. § 3391 (2002). La validez del contrato de hipoteca depende, además, de que se cumplan los siguientes requisitos: (1) que se constituya para asegurar el cumplimiento de una obligación principal; (2) que la cosa hipotecada pertenezca en propiedad al que la hipoteca; (3) que las personas que constituyan la hipoteca tengan la libre

disposición de sus bienes o en caso de no tenerla, se hallen legalmente autorizadas para ello; y (4) que la escritura se inscriba en el Registro de la Propiedad. 31 L.P.R.A. § 5001, 5042 (2002).

Al respecto la Ley Hipotecaria y del Registro de la Propiedad dispone:

> Son hipotecas voluntarias las convenidas entre partes o impuestas por disposición del dueño de los bienes o derechos sobre que se constituyan y únicamente podrán ser establecidas por quienes tengan la libre disposición de dichos bienes o derechos o, en caso de no tenerla se hallen autorizados para ello con arreglo a las leyes. 30 L.P.R.A. § 2601 (2001).

Además, requiere que el contrato de hipoteca se haya acordado en escritura pública y que la escritura se haya inscrito en el Registro de la Propiedad. 30 L.P.R.A.§ 2607 (2001).

Como sabemos, la hipoteca presupone la existencia de una obligación por la cual, como regla general, el deudor responde con todos sus bienes presentes y futuros. Por lo tanto, el acreedor hipotecario tiene el derecho de hacer efectivo su crédito contra todo el patrimonio del deudor y, además, posee un derecho real sobre un bien determinado que responde de la deuda aunque haya pasado a manos de un tercero. Luis Rafael Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño 496 (2002).

En el caso de autos, el demandante Romero y los peticionarios suscribieron un contrato de compraventa simulado, lo cual tiene serias implicaciones para el acreedor hipotecario ausente en el pleito. Este contrató con los peticionarios, actuando éstos como dueños de la propiedad hipotecada como consecuencia de la compraventa simulada. Se trata, según surge de los hechos probados en instancia, de una simulación absoluta que conlleva, no el descubrimiento de otro negocio lícito y verdadero, sino la nulidad absoluta. 31 L.P.R.A. § 3433 (2002); Comentarios al Código Civil y Compilaciones Forales, XVII Revista de Derecho

PRIVADO 455-56 (Joaquín Rams Albesa, autor del comentario); 580 (Luis Humberto Claveria Gosalbez, autor del comentario) (1993). Así lo decretó el foro de instancia. Por consiguiente, el contrato simulado no produjo efectos jurídicos. Díaz García v. Aponte Aponte, 125 D.P.R. 1 (1989). Al anularse la compraventa simulada en este caso, la titularidad del inmueble hipotecado nunca perteneció a los peticionarios y éstos no tenían la facultad de gravarlo. La ausencia de esta facultad ciertamente incide en el convenio de garantía hipotecaria y puede afectar el interés del Banco sobre el inmueble que garantiza el pago del préstamo. COMENTARIOS AL CÓDIGO CIVIL Y COMPILACIONES FORALES, *supra*, en la pág. 597 (Luis Humberto Claveria Gosalbez, autor del comentario); Sentencia del Tribunal Supremo de España de 19 de diciembre de 1964.

Por otro lado, la declaración de nulidad de un contrato por simulación, representa un problema para los acreedores de ambos simulantes, cuyos intereses estarán en riesgo porque:

> [a] los del vendedor fingido les interesa que el patrimonio de su deudor no se vea disminuido con la pérdida del bien: a los del adquirente fingido les conviene, por el contrario, que el activo de su deudor quede aumentado. Los primeros tienen legitimación para impugnar el negocio por tener interés legítimo en que la simulación se declare, y los segundos en coadyuvar judicialmente a que se mantenga aquel negocio. DÍEZ PICAZO & GULLÓN, *supra*, en la pág. 523.

Los derechos del Banco como acreedor de la parte peticionaria en este caso indudablemente se verán amenazados al declararse nula la compraventa mediante sentencia válida. El Banco no sólo verá disminuido el patrimonio de su deudor al revertir la titularidad del inmueble al demandante sino que, más importante aún, podría afectarse el derecho real que posee sobre el inmueble en controversia, que garantiza el préstamo concedido a los peticionarios.

A la luz de lo antes expuesto, resulta forzoso concluir que el Western Federal Savings Bank es parte indispensable en este pleito. Ciertamente, al Banco se le privó de su derecho al debido proceso de ley, al no incluírsele como parte en el presente litigio y al pretender dar finalidad a una sentencia que declaró la nulidad del contrato de compraventa y que ordenó la anulación en el Registro de la Propiedad de los asientos provocados por dicha escritura. Al banco, como acreedor hipotecario, debió habérsele dado la oportunidad de defender sus intereses ya que la sentencia del foro de instancia podía lesionar directamente dichos intereses. En estas circunstancias, la falta de incluir al banco como parte en el presente litigio conlleva la revocación de la sentencia recurrida.

IV.

Por los fundamentos antes expuestos, revocamos la sentencia recurrida y desestimamos la presente acción contra los peticionarios, sin perjuicio. En vista de esta determinación, resulta innecesario discutir el cuarto señalamiento de error en que se solicita que revisemos la imposición de honorarios de abogados.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel Luis Romero

    Recurrido

      v.

Jorge L. Reyes Rivera y su
esposa Myriam Carrasquillo          CC-2000-559          Certiorari
Santiago y la Sociedad Legal de
Gananciales entre ellos
constituida

    Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 28 de abril de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, revocamos la sentencia recurrida y desestimamos la presente acción contra los peticionarios, sin perjuicio.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez inhibido.

Aida Ileana Oquendo Graulau
Secretaria General