| | |
|---|---|
| Orlando Pérez Rosa<br><br>Recurrido<br><br>vs.<br><br>Ana Morales Rosado, Et Al.<br><br>Peticionarios | Certiorari<br><br>2007 TSPR 171<br><br>172 DPR \_\_\_\_ |

Número del Caso: CC-2006-269

Fecha: 28 de septiembre de 2007

Tribunal de Apelaciones:

      Región Judicial de Bayamón-Panel VII

Juez Ponente:

      Hon. German J. Brau Ramírez

Abogado de la Parte Peticionaria:

      Lcdo. Javier López-Pérez

Abogado de la Parte Recurrida:

      Lcdo. Ignacio J. Gorrín Maldonado

Materia: Resolución de Contrato de Compraventa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Orlando Pérez Rosa

    Recurrida

         vs.                     CC-2006-269       Certiorari

Ana Morales Rosado, Et Al.

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 28 de septiembre de 2007.

Tenemos la ocasión para aclarar y precisar cuándo el acreedor hipotecario es parte indispensable en un litigio sobre un inmueble gravado por una hipoteca.

I.

El 5 de febrero de 2003 Orlando Pérez Rosa (en adelante el recurrido) adquirió de Ana Morales Rosado (en adelante la peticionaria) y su esposo, Samuel Vázquez Lozano, un apartamento ubicado en el Condominio Las Villas en Bayamón. El negocio se realizó mediante la Escritura Número 65, otorgada en la misma fecha ante el notario Edgardo Delgado

Colón. El precio de venta acordado fue de $128,000. El recurrido pagó $16,000 por concepto de pronto pago y gastos de cierre, y constituyó una hipoteca a favor del Banco Popular de Puerto Rico (en adelante el Banco) por el balance del precio.

Previo al otorgamiento del contrato, los peticionarios no advirtieron al recurrido que el apartamento adoleciera defecto alguno. El 11 de marzo de 2003 el recurrido se mudó al apartamento, el cual, varios días después, comenzó a manifestar un grave problema de filtraciones en el techo. Según las determinaciones de hecho del Tribunal de Primera Instancia, el apartamento presentaba problemas de filtraciones en el área del cuarto principal, en la sala-comedor y en el clóset de uno de los dormitorios. La filtración en el techo de la sala-comedor se extendía "de lámpara a lámpara", lo que representaba un área aproximadamente de diez pies de largo.

Ante tal situación, el recurrido acudió al administrador del complejo residencial, quien le reveló que la peticionaria había notificado en varias ocasiones a la administración del condominio sobre el problema de filtración y que, en mayo de 2002, había presentado una querella formal ante la oficina administrativa.

El recurrido también advino en conocimiento de que, pocos meses antes de que él comprara el apartamento, en mayo de 2002, la peticionaria y su esposo habían presentado una querella ante el Departamento de Asuntos del Consumidor (DACO), contra una corporación que había

realizado trabajos de impermeabilización en el techo del apartamento. En esa querella, la peticionaria había descrito la magnitud de las filtraciones existentes como "un chorro de agua".

Por su parte, al recurrido inquirirle sobre el problema de las filtraciones, la peticionaria expresó que no le había notificado sobre el mismo, pues ella entendía que éste se había corregido. Esto porque, antes de la venta del inmueble, había contratado a Walter Rivera Pastor (en adelante Rivera Pastor) para que sellara el techo del apartamento. Sin embargo, Rivera Pastor no se dedicaba a ese tipo de trabajo, ni poseía estudios o preparación especial relacionada a la materia, sino que trabajaba como funcionario público llevando a cabo labores oficinescas. Éste dijo en el juicio que accedió a sellar el techo como un "chivito", a solicitud de la peticionaria. Testificó también que fue la peticionaria quien seleccionó y compró el material para sellar el techo en una ferretería, y que éste no era un producto profesional. Expresó que él se limitó a leer las instrucciones y a aplicarlo según las recomendaciones del fabricante.[1]

Sin embargo, la aplicación del material sellador al techo por Rivera Pastor no resolvió el problema. Dada la magnitud de las filtraciones, el recurrido no pudo

---

[1] Valga mencionar que la oficina de administración del complejo residencial había notificado a los residentes que no debían reparar las filtraciones por su cuenta, pues eso podía afectar la solicitud ante el DACO.

amueblar el apartamento o habitarlo apropiadamente como su residencia. Éste se limitó a utilizarlo para pernoctar durante los días de la semana de trabajo, y durante los fines de semana viajaba a Aguadilla.

Por los hechos antes descritos, el 9 de junio de 2003 el recurrido presentó ante el Tribunal de Primera Instancia, Sala de Bayamón, una demanda en contra los esposos vendedores y la sociedad legal de bienes gananciales integrada por ellos. Alegó que su consentimiento para la compra del inmueble estuvo viciado por las actuaciones dolosas de la peticionaria, quien, a sabiendas, le había ocultado el problema de filtraciones del apartamento. Solicitó como remedio la resolución de la compraventa, que se obligara a los demandados a comprarle el inmueble por la misma cantidad que él lo había adquirido, el reembolso de los pagos de la hipoteca que él había estado efectuando, que se le compensara por otras sumas invertidas, daños y honorarios de abogado.

La peticionaria contestó la demanda y negó los hechos alegados por el recurrido. Posteriormente, ésta trajo como terceros demandados a los dueños anteriores del apartamento y a otras partes, las cuales no comparecieron al pelito.

Luego de varios incidentes procesales, el Tribunal de Primera Instancia celebró la vista en su fondo. Ambas partes presentaron evidencia testifical y documental en

apoyo de sus respectivas posiciones.[2] Durante la vista, al preguntársele por qué no le había comunicado la existencia del problema al recurrido, la peticionaria expresó que "tal vez si me lo hubiera preguntado, se lo hubiera dicho".

A base de la prueba desfilada, el 2 de septiembre de 2004 el foro de instancia emitió una sentencia a favor del recurrido, en la cual determinó que la peticionaria había actuado de manera dolosa en el otorgamiento del contrato al ocultar la existencia del problema de filtraciones que adolecía el inmueble. Por consiguiente, el foro primario ordenó a los demandados a comprarle al recurrido el apartamento por la misma cantidad que él había pagado y a reembolsarle la cantidad que éste había desembolsado por concepto de pagos de la hipoteca. Además, le concedió al recurrido una compensación de $10,000 por las angustias mentales sufridas, así como $3,000 por concepto de honorarios de abogado, ya que determinó que los demandados habían actuado temerariamente. Finalmente, el foro primario desestimó, por insuficiencia de prueba, las reclamaciones instadas por los demandados en contra de los terceros demandados.

Inconforme con la sentencia emitida, la peticionaria acudió ante el Tribunal de Apelaciones mediante un recurso de apelación. En éste, la peticionaria alegó que había errado el Tribunal de Primera Instancia al concluir que

---

[2] A pesar de que la peticionaria había anunciado que contaría con el testimonio de ocho testigos, ésta sólo presentó tres de los testigos anunciados.

ella había actuado dolosamente en el otorgamiento del contrato.

El tribunal *a quo* determinó que el dictamen del foro primario estaba razonablemente sostenido por la evidencia presentada y creída por el juzgador y, que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, éste merecía deferencia. Por consiguiente, confirmó la sentencia apelada.

De esa determinación acudió ante nosotros la peticionaria mediante un recurso de *certiorari*, en el cual planteó lo siguiente:

a. Incidió el Honorable Tribunal de Apelaciones al confirmar la sentencia declarando con lugar la demanda determinando que el demandante recurrido probó la existencia de <u>dolo grave</u> en la contratación según requiere nuestro ordenamiento jurídico.

b. Incidió el Honorable Tribunal de Apelaciones al confirmar la sentencia declarando con lugar la demanda y ordenando la devolución de las contraprestaciones, ya que el demandante recurrido <u>tenía que incluir a los acreedores hipotecarios como parte indispensable</u>.

El 19 de mayo de 2006 emitimos una resolución mediante la cual concedimos a la parte recurrida un término para que mostrara causa, si alguna tenía, por la cual no debía expedirse el auto solicitado. Contando con la comparecencia de ambas partes, pasamos a resolver.

II.

Sabido es que las cuestiones relacionadas a la jurisdicción de un tribunal deben resolverse con

preferencia a cualesquiera otras. Autoridad sobre Hogares v. Sagastivelza, 71 D.P.R. 436 (1950). Por tratarse el segundo señalamiento de error de un planteamiento sobre falta de jurisdicción por no haberse acumulado una parte indispensable, pasamos a atenderlo primeramente.

El mecanismo de acumulación de parte indispensable está regulado por la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.1. Parte indispensable es "aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio". J. A. Cuevas Segarra, *Tratado de derecho procesal civil*, Tomo I, Puerto Rico, Publicaciones JTS, 2000, pág. 371. No es cualquier interés sobre un pleito, sino que se trata de un interés de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos. Pueblo v. Henneman, 61 D.P.R. 189, 194 (1942). Ese interés tiene que ser real e inmediato. No se trata de meras especulaciones o de un interés futuro. Torres v. Alcalde, 135 D.P.R. 110 (1994).

La determinación de si debe acumularse una parte depende de los hechos específicos de cada caso particular. Granados v. Rodríguez Estrada II, 124 D.P.R. 593 (1989); Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991). Los tribunales tienen que hacer un análisis juicioso que envuelva la determinación de los derechos de un ausente y las consecuencias de no ser unido como parte en el procedimiento. Sánchez v. Sánchez, 154 D.P.R. 645 (2001).

Es importante auscultar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente. J. A. Cuevas Segarra, *Tratado de derecho procesal civil*, *supra* a la pág. 368. Una vez se concluya que una persona es parte indispensable, el pelito no podrá adjudicarse sin su presencia. Por consiguiente, dicha persona se tiene que hacer formar parte del procedimiento acumulándose como parte demandante o demandada, según corresponda. De este modo, la regla referida busca evitar que la persona ausente se vea privada de su propiedad sin un debido proceso de ley y que el remedio adjudicado sea completo. Romero v. S.L.G. Reyes, res. el 28 de abril de 2005, 164 D.P.R. _____ (2005), 2005 TSPR 58, 2005 JTS 66.

De tal arraigo es el interés de proteger a las partes indispensables, que la no inclusión en el pelito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso. Sánchez v. Sánchez, *supra*. Incluso, los tribunales apelativos deben levantar *motu propio* la falta de parte indispensable, debido a que ésta incide sobre la jurisdicción del tribunal. De reconocerse que está ausente una parte indispensable, debe desestimarse la acción. Sin embargo, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada. Romero v. S.L.G. Reyes, *supra*.

En el caso de autos, la peticionaria alegó que el Banco, como acreedor hipotecario, era una parte

indispensable para la adjudicación del litigio, por lo que su ausencia del pleito acarreaba la revocación de la sentencia recurrida. Su argumentación estuvo basada en lo resuelto por este Tribunal en Romero v. S.L.G. Reyes, *supra*.

Por su parte, el recurrido señaló que lo resuelto en Romero, *supra,* no es de aplicación al caso de autos, pues ambos casos son claramente distinguibles. En la alternativa, el recurrido argumentó que, en caso de que este Tribunal decida que la norma establecida en Romero, *supra,* es aplicable al presente litigio, por consideraciones de justicia, la misma no debe aplicarse retroactivamente al presente caso. Ello ya que Romero, *supra,* no fue resuelto sino hasta pasados cinco meses de la peticionaria haber presentado su apelación ante el Tribunal de Apelaciones. El recurrido alegó haber descansado en las normas de derecho vigentes al momento de presentar y tramitar su causa de acción, por lo que no debe penalizársele, aplicando retroactivamente la nueva norma establecida en Romero, *supra*.

Para resolver el asunto referido en los párrafos anteriores, debemos repasar los hechos de Romero, *supra*.

En Romero, *supra*, los esposos Jorge Reyes Rivera y Myriam Carrasquillo Santiago, junto a Ángel Luis Romero, otorgaron una escritura pública, mediante la cual se hizo constar la compraventa de un inmueble perteneciente a Romero. Ese mismo día los esposos compradores otorgaron

una escritura de constitución de hipoteca sobre el inmueble objeto del negocio.

Posteriormente, surgieron desacuerdos entre las partes contratantes, los cuales culminaron en un pleito judicial, del cual sólo formaron parte los esposos Reyes-Carrasquillo y Romero. Celebrado el juicio en su fondo, el Tribunal de Primera Instancia concluyó que la compraventa referida había sido simulada. El foro primario determinó que los esposos demandados habían fingido la compraventa con el propósito de lograr hipotecar la finca y darle a Romero el dinero obtenido como consecuencia de la constitución de la hipoteca. Todo ello como parte de un plan para ayudar a Romero, quien, debido a problemas económicos, no había logrado obtener financiamiento para pagar sus deudas.

Habiendo concluido que se trataba de un caso de simulación absoluta, el foro de instancia, entre otras cosas, ordenó la anulación en el Registro de la Propiedad de los asientos provocados por la escritura, de tal forma que el dominio del inmueble en ella inscrito figurara registrado a favor de su verdadero dueño, Romero. Por consiguiente, tanto la inscripción del dominio a favor de los esposos como la hipoteca inscrita a favor del acreedor hipotecario serían eliminadas del Registro de la Propiedad.

Inconformes, los esposos demandados acudieron ante el Tribunal de Apelaciones, el cual confirmó la sentencia recurrida. Insatisfechos aún, éstos recurrieron ante este

Tribunal y alegaron, entre otras cosas, que el banco que era acreedor hipotecario era parte indispensable en el pleito.

En ese caso expedimos el auto de *certiorari* y revocamos la sentencia recurrida por entender que **bajo los hechos particulares del caso**, el acreedor hipotecario era parte indispensable del procedimiento. Ello, ya que siendo nulo el contrato simulado, la titularidad del inmueble hipotecado nunca perteneció a los esposos y éstos no tenían facultad para gravarlo.[3] La ausencia de esa facultad ciertamente incidía en el convenio de garantía hipotecaria, pudiendo afectarse así el interés del banco sobre el inmueble que garantizaba el pago del préstamo.

Como se puede apreciar, según las circunstancias del caso de Romero, *supra*, el derecho del acreedor hipotecario podía quedar destruido o inevitablemente afectado por la sentencia dictada estando éste ausente del litigio. De ese modo, se le estaría violentando su derecho a un debido proceso de ley. Esa es la situación necesaria para que una persona se considere parte indispensable en un litigio.

---

[3] Como se sabe, el contrato de hipoteca, como todo contrato, requiere para su validez que concurran los elementos esenciales de consentimiento, objeto y causa. 31 L.P.R.A. sec. 3391. La validez del contrato de hipoteca depende, además, de que se cumplan los siguientes requisitos: (1) que se constituya para asegurar el cumplimiento de una obligación principal; (2) que la cosa hipotecada pertenezca en propiedad al que la hipoteca; (3) que las personas que constituyan la hipoteca tengan la libre disposición de sus bienes o en caso de no tenerla, se hallen legalmente autorizadas para ello; y (4) que la escritura se inscriba en el Registro de la Propiedad. 31 L.P.R.A. § 5001, 5042.

Sin embargo, ésa no es la situación presente en el caso ante nuestra consideración.

En el caso de autos, a diferencia de Romero, *supra*, el contrato otorgado por las partes tiene efectos jurídicos. El contrato en Romero, *supra*, no era capaz de producir efectos jurídicos pues al mediar una simulación absoluta, el mismo era nulo y lo que es nulo no produce efectos. Por consiguiente, este no podía servir de base para la posterior constitución de la hipoteca. Sin embargo, ésa no es la situación en el presente caso. Aquí las partes llevaron a cabo un negocio válido, donde se llegó a perfeccionar el contrato, aunque éste contó con un consentimiento viciado debido al dolo empleado por la peticionaria. No obstante, el vicio en el consentimiento no hace que el contrato sea nulo, inválido o ineficaz. El efecto que tiene el haber mediado dolo grave en el consentimiento prestado es que el recurrido tiene cuatro años desde la consumación del contrato para, si así lo deseara, pedir la anulación y resolución del mismo. 31 L.P.R.A. sec. 3511; Soto v. Rivera, 144 D.P.R. 500 (1997). Sin embargo, si el recurrido no ejercitara ese derecho dentro del término dispuesto (los cuatro años), dicho contrato se entendería confirmado y el mismo no se podría impugnar. *Id*; 31 L.P.R.A. sec. 3512. De este modo, teniendo efectos jurídicos el contrato de compraventa, a diferencia de Romero, *supra,* donde el negocio simulado no podía tener efecto jurídico alguno, el recurrido tenía la facultad de gravar el inmueble con una hipoteca. Por

consiguiente, el derecho de hipoteca a favor del banco es válido y el mismo subsiste.

Otro aspecto que distingue el presente caso de Romero, *supra,* es el hecho de que los remedios solicitados y concedidos en ambos casos son sumamente diferentes y acarrean consecuencias muy distintas. En Romero, *supra,* se solicitó la anulación de los asientos generados a raíz de la escritura de venta simulada. De este modo el acreedor hipotecario vería desaparecer su garantía real. En cambio, en el caso de autos el remedio solicitado y concedido no fue la anulación de ningún asiento, sino que la peticionaria le comprara el inmueble al recurrido por el mismo precio que éste lo había adquirido. Dicha transacción conllevaría necesariamente una de dos posibilidades, ninguna de las cuales afectaría los derechos del acreedor hipotecario. Éstas son: (1) que la peticionaria compre el inmueble mediante el otorgamiento de un nuevo financiamiento, en cuyo caso se saldaría y cancelaría el actual gravamen inscrito a favor del banco; o, (2) que la peticionaria se subrogue en las obligaciones actuales del recurrido y asuma la deuda contraída por éste.[4] De tal forma, el banco no vería su garantía menoscabada como consecuencia de lo alegado en el pleito ni de lo dictaminado en la sentencia recurrida. Inclusive, el banco no ha visto sus intereses y derechos afectarse de ninguna manera, pues el recurrido ha reconocido que tiene

---

[4] Esta última posibilidad requeriría el consentimiento del acreedor hipotecario.

una obligación contractual con el acreedor hipotecario, que continúa satisfaciéndose a cabalidad desde el momento en que se perfeccionó el contrato de hipoteca.

Según la norma jurídica discutida anteriormente sobre parte indispensable, **no puede determinarse mecánicamente que siempre que haya un litigio sobre un inmueble, el acreedor hipotecario será una parte indispensable del procedimiento. La determinación de si debe acumularse una parte depende de los hechos específicos de cada caso particular. Sólo será parte indispensable aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio.**

Por todo lo anterior, resolvemos que, **<u>debido a los hechos y circunstancias particulares del presente caso</u>, el acreedor hipotecario no era parte indispensable en el litigio.** Por consiguiente, no erró el Tribunal de Apelaciones al no revocar, por ese fundamento, la sentencia recurrida.[5]

III.

En su recurso, la peticionaria planteó que incidió tanto el foro primario como el intermedio al concluir que ella había actuado dolosamente en el otorgamiento del contrato. No le asiste la razón.

---

[5] Esta determinación hace innecesario que nos pronunciemos sobre la petición del recurrido de no aplicar de forma retroactiva la norma establecida en <u>Romero</u>, *supra*.

Es harto conocido que la existencia de un contrato requiere, entre otros elementos esenciales, que los contratantes expresen su consentimiento al negocio. 31 L.P.R.A. sec. 3391; Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996). Ese consentimiento, de ordinario, se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio. Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517 (1982).

Ahora bien, el consentimiento es nulo cuando se ha producido por error, violencia, intimidación o dolo. 31 L.P.R.A. sec. 3404. De mediar alguno de estos factores, la parte afectada cuenta con una acción para solicitar la nulidad del contrato, la cual puede ser ejercitada dentro de un periodo de cuatro años, contados a partir de la consumación del contrato o desde que ha cesado la violencia o intimidación contra dicha parte. Colón v. Promo Motor Imports, 144 D.P.R. 659 (1997). En estos casos, las partes vienen generalmente obligadas a restituirse las prestaciones objeto del contrato. 31 L.P.R.A. § 3514.

Existe dolo cuando una parte es inducida a celebrar un contrato mediante maquinaciones insidiosas. El dolo implica

> todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a reunirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él... Es la voluntad consciente de producir un acto injusto. Colón v. Promo Motor Imports, *supra*.

El dolo puede manifestarse al momento de la contratación o posteriormente, en la consumación del contrato. Mayagüez Hilton v. Betancourt, 156 D.P.R. 234 (2002). El dolo no se presume. No obstante, como cualquier otro elemento mental, no tiene que ser establecido directamente, sino que puede inferirse de las circunstancias presentes en el caso en particular. *Id*.

Para que produzca la nulidad del contrato, el dolo tiene que ser grave[6] y no meramente incidental[7], y no puede haber sido empleado por ambas partes contratantes. El dolo incidental sólo da lugar a la indemnización de los daños y perjuicios ocasionados. *Id*; 31 L.P.R.A. sec. 3409.

En el caso de autos, el Tribunal de Primera Instancia determinó que la peticionaria había incurrido en dolo grave, porque había ocultado deliberadamente al recurrido que el apartamento sufría de un serio problema de filtraciones. Dicho foro expresó:

> La prueba documental y testifical creída por este Tribunal demostró claramente el dolo y el engaño al cual fuera sometido el Sr. Orlando Pérez Rosa. No albergamos la más mínima duda que [la peticionaria] premeditadamente ocultó

---

[6] El dolo grave es aquél que recae sobre elementos esenciales del contrato y determina el consentimiento. Es el que inspira a contratar, sin el cual no hubiera habido contratación. J. R. Vélez Torres, *Curso de Derecho Civil*, 1ra edición, Puerto Rico, 1990, Tomo IV, Vol. II, págs. 58-61.

[7] El dolo incidental es aquél que no tiene una influencia decisiva en la esencia de la obligación, sino que sólo facilita la celebración del contrato. Sin el dolo incidental, el contrato de todas formas se hubiera celebrado, aunque no con las mismas condiciones. J. R. Vélez Torres, *Curso de Derecho Civil*, *supra*.

al demandante toda la situación de la filtración y el arreglo temporero y casero por ella realizado. La demandada admitió haber alterado la querella presentada en DACO. Su comportamiento en sala y gestos comunican grandes diferencias con sus expresiones verbales. Su mirada en ocasiones baja, esquiva en otras, ojos muy abiertos, temblorosa de manos y mandíbula, contrasta grandemente con la frialdad y cálculo al contestar. Sus expresiones "tal vez si me lo hubiera preguntado, se lo hubiera dicho", unido a su lenguaje corporal son muestra de la maquinación insidiosa realizada por ella.

Es norma conocida que la apreciación de la prueba realizada por el juzgador de primera instancia merece deferencia y que sus determinaciones deben ser respetadas, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Orta v. Padilla, 137 D.P.R. 927 (1995).

En el caso de autos, el dictamen recurrido está sostenido por la prueba vertida y creída por el juzgador. La peticionaria incurrió en dolo grave al callar sobre una circunstancia importante respecto al objeto del contrato. Por consiguiente, el error señalado no se cometió.

IV.

Por los fundamentos antes expuesto, se expide el auto de *certiorari* y se confirma la sentencia recurrida.

Se dictará sentencia de conformidad.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Orlando Pérez Rosa

  Recurrida

    vs.       CC-2006-269  Certiorari

Ana Morales Rosado, Et Al.

  Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 28 de septiembre de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se expide el auto de *certiorari* y se confirma la sentencia dictada por el Tribunal de Apelaciones, Circuito Regional de Bayamón.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rebollo López disiente. Entiende que, dados los hechos particulares del caso, el Banco Popular de Puerto Rico es una parte indispensable en el mismo. El Juez Rebollo López es del criterio, <u>además</u>, que la ponencia mayoritaria emitida deja en el limbo jurídico unas importantes cuestiones o interrogantes que deben ser atendidas y resueltas por el Tribunal. Únicamente a manera de ejemplo, y entre otras, nos cuestionamos: si la compraventa en controversia adolece del vicio de dolo grave en el consentimiento –lo cual tiene la consecuencia inescapable de hacerla nula y, en consecuencia, procede decretar la resolución del negocio jurídico llevado a cabo, volviendo la situación a su estado original-- ¿cómo es posible que el comprador del apartamento permanezca como

dueño de dicho inmueble en el Registro de la Propiedad, y responsable del pago de la hipoteca que lo grava, cuando él jurídicamente no es el dueño de dicho apartamento?




                        Dimarie Alicea Lozada
              Secretaria del Tribunal Supremo Interina