ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| CARMEN M. RÍOS NEGRÓN<br><br>Peticionaria<br><br>v.<br><br>HOSPITAL GENERAL MENONITA, INC.; CHUBB INSURANCE COMPANY OF PUERTO RICO Y OTROS<br><br>Recurridos | KLCE202400674 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Número: CY2023CV00039<br><br>Sobre: Daños y Perjuicios (Caída) |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de julio de 2024.

Comparece Carmen M. Ríos Negrón ("señora Ríos Negrón" o "Peticionaria") mediante recurso de *Certiorari* y solicita la revisión de la *Orden* notificada el 17 de enero de 2024 por el Tribunal de Primera Instancia, Sala de Caguas ("TPI"). Mediante el referido dictamen, el TPI denegó la enmienda a la demanda solicitada por la Peticionaria, a los efectos de incluir como codemandados al contratista encargado de mantenimiento en el Hospital General Menonita, Inc. ("Hospital Menonita" o "Recurrido") y su aseguradora.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* solicitado y se *Revoca* el dictamen recurrido. Consecuentemente, se devuelve el caso al foro primario para que continúen los procedimientos, de conformidad con lo aquí resuelto.

**I.**

El 1 de febrero de 2023, la señora Ríos Negrón presentó ante el TPI una *Demanda* sobre daños y perjuicios en contra del Hospital Menonita. En síntesis, la Peticionaria adujo que, el 2 de octubre de 2022, sufrió una caída en un pasillo del Hospital Menonita de Cayey como consecuencia de que el piso se encontraba mojado.

Número Identificador
SEN2024_____

El 8 de marzo de 2023, el Hospital Menonita presentó su *Contestación a Demanda*. En lo aquí pertinente, el Recurrido alegó que las funciones de mantenimiento del hospital eran realizadas por un tercero contratista.

Posteriormente, el 18 de agosto de 2023, se celebró la Conferencia Inicial. Conforme surge de la *Minuta*, al discutir la responsabilidad del contratista encargado del mantenimiento, las partes señalaron las siguientes alternativas: (1) que la señora Ríos Negrón trajera al contratista al pleito, o; (2) que el Hospital Menonita instara una demanda contra tercero en contra del contratista. Así las cosas, el TPI les indicó a las partes que el tercero contratista podría ser traído al pleito como un tercero demandado.[1]

El 29 de agosto de 2023, la señora Ríos Negrón presentó una *Demanda Enmendada*, a los únicos efectos de sustituir a "Aseguradora A" por la aseguradora del Hospital Menonita, Chubb Insurance Company ("Chubb"). El foro primario aceptó la enmienda a la demanda mediante *Orden* dictada el 29 de agosto de 2023 y notificada el 31 del mismo mes y año.

Luego, el 1 de septiembre de 2023, el Hospital Menonita presentó una *Demanda Contra Tercero* en contra del contratista de mantenimiento, Perfect Integrated Solutions, Inc. y/o Perfect Cleaning Services, Inc. (en conjunto, "PCS"), y su aseguradora, MAPFRE PAICO Insurance Co. ("MAPFRE"). Sin embargo, aceptada la demanda contra terceros, el 9 de noviembre de 2023, el Hospital Menonita presentó una *Moción de Desistimiento Voluntario*, en la cual desistió sin perjuicio de su demanda contra terceros. Ese mismo día, el foro primario emitió una *Sentencia Parcial*, notificada el 15 de noviembre de 2023. Mediante el precitado dictamen, el TPI archivó sin perjuicio la acción contra PCS y MAPFRE.

El 12 de diciembre de 2023, la señora Ríos Negrón solicitó autorización para presentar una *Segunda Demanda Enmendada*, a los

---

[1] Véase, Apéndice de la Parte Peticionaria, a la pág. 20 (*Minuta*).

efectos de acumular a PCS y MAPFRE como codemandados. Tal solicitud fue denegada mediante *Orden* emitida el 13 de diciembre de 2023 y notificada el 17 de enero de 2024.

Insatisfecha, el 29 de enero de 2024, la señora Ríos Negrón presentó una *Moción de Reconsideración*. La Peticionaria adujo que, la enmienda a la demanda tenía el fin incluir en el pleito a aquellas partes que pudieran serle responsables. Además, señaló que, la enmienda a la demanda fue solicitada dentro del término prescriptivo, el cual comenzó a transcurrir cuando advino en conocimiento del posible tercero responsable y de su aseguradora. Por otro lado, adujo que las enmiendas solicitadas no atrasarían los procedimientos, ya que estos se encontraban en la etapa del descubrimiento de prueba.

El 8 de abril de 2024, la señora Ríos Negrón presentó una *Moción Solicitando Se Resuelva Moción de Reconsideración y Solicitud de Conversión de Vista*. En lo aquí pertinente, la Peticionaria adujo que la solicitud de reconsideración no tuvo oposición alguna y le instó al foro primario a resolver la misma favorablemente. En respuesta, ese mismo día, el Hospital Menonita presentó una moción mediante la cual arguyó que no estaba obligado a expresarse en torno a la solicitud de reconsideración. Asimismo, alegó que la solicitud de enmienda no fue oportuna.

Tras varias instancias procesales, el 17 de mayo de 2024, se celebró la Vista de Conferencia con Antelación a Juicio. Surge de la *Minuta* que, durante la Vista, la moción de reconsideración fue discutida por las partes. Conforme surge, la señora Ríos Negrón expuso que, como parte indispensable, era necesario incluir al encargado de mantenimiento en el pleito. En cambio, el Hospital Menonita sostuvo que PCS no era parte indispensable y, que existía una sentencia parcial en su contra. Culminada la vista, el TPI emitió una *Orden* mediante la cual declaró *No*

*Ha Lugar* la solicitud de reconsideración presentada por la señora Ríos Negrón.[2]

Inconforme, el 17 de junio de 2024, la señora Ríos Negrón acudió ante esta Curia mediante recurso de *Certiorari*. La Peticionaria le imputó al TPI la comisión del siguiente error:

> **Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud de reconsideración y, por ende, la segunda demanda enmendada para incluir como una parte responsable, a pesar de establecerse la necesidad de la enmienda, haberse presentado a tiempo y no causar perjuicio a las partes.**

Por su parte, el 26 de junio de 2024, el Hospital Menonita presentó su alegato en oposición. Perfeccionado el recurso y con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF*

---

[2] Véase SUMAC, Entrada Núm. 50 (*Minuta*).

*Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para analizar el problema.
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio,

parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

Sobre las enmiendas a las alegaciones, la Regla 13.1 de las de Procedimiento Civil dispone que:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva. Si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal lo ordene de otro modo. 32 LPRA Ap. V., R. 13.1.

Cónsono con esta disposición, una vez que las partes han intercambiado alegaciones, solamente podrán enmendarlas con el consentimiento escrito de la parte contraria o con el permiso del tribunal. Nuestro más Alto Foro ha resuelto que los tribunales deberán conceder el permiso para enmendar las alegaciones originales de forma liberal, aun cuando el proceso se encuentre en una etapa avanzada. *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 198 (2012). A lo anterior, debe integrarse

que existe una clara política judicial de que los casos se ventilen en sus méritos. *Íd.*

A pesar de que las Reglas de Procedimiento Civil favorecen un enfoque liberal para autorizar enmiendas a las alegaciones, esta liberalidad no es infinita. *Colón Rivera v. Wyeth Pharm., supra,* a la pág. 199, citando a *S.L.G. Font Bardón v. Mini-Warehouse,* 179 DPR 322 (2010); *Romero v. S.L.G. Reyes,* 164 DPR 721, 730 (2005); *Epifanio Vidal, Inc. v. Suro,* 103 DPR 793, 796 (1976). El Tribunal Supremo ha expresado que, antes de autorizar una enmienda a las alegaciones, el tribunal debe analizar y tomar en consideración: (1) el impacto del tiempo trascurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada. *Colon Rivera v. Wyeth Pharm, supra,* a la pág. 199, citando a *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 748 (2005). Sin embargo, el Alto Foro ha reiterado que, "[e]l factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el perjuicio que puede causarse a la parte contraria". *Íd.*

### III.

Como único señalamiento de error, la Peticionaria sostiene que el foro primario erró al denegar la enmienda a la demanda, a pesar de que la misma fue oportuna, era necesaria y no ocasionaría perjuicio. Le asiste la razón. Veamos.

En el caso de marras, el TPI declaró *No Ha Lugar* la solicitud instada por la señora Ríos Negrón para presentar una segunda demanda enmendada, a los efectos de incluir como codemandados a la compañía encargada de mantenimiento en el Hospital Menonita y a la aseguradora de la referida compañía. Cabe destacar que el TPI no fundamentó su denegatoria.

En nuestra jurisdicción, es norma reiterada que, los tribunales deberán autorizar las enmiendas a las alegaciones de manera liberal. La autorización para enmendar las alegaciones, usualmente, se deniega

cuando entraña un perjuicio indebido a la parte concernida o cuando se intenta enmendar en un momento irrazonablemente tardío.

Ahora bien, conforme surge del expediente, durante la Vista de Conferencia Inicial, las partes discutieron la posibilidad de que la señora Ríos Negrón acumulara en el pleito al encargado de mantenimiento o, en la alternativa, que el Hospital Menonita lo trajera como un tercero demandado. Presentadas las alternativas, el TPI les indicó a las partes que el Hospital Menonita podría acumular al contratista de mantenimiento como un tercero demandado.

Como corolario, la Peticionaria procedió a presentar una demanda enmendada, a los únicos efectos de traer al pleito a la aseguradora del Hospital, Chubbs, no así a la compañía encargada de mantenimiento y su aseguradora. En cambio, el Recurrido presentó una demanda contra tercero en contra de PCS y MAPFRE, según lo discutido en la Vista. Sin embargo, previo a que los terceros demandados comparecieran al pleito, el Hospital Menonita presentó una moción de desistimiento sin perjuicio. Una vez aprobado el desistimiento, y aun durante la etapa de descubrimiento de prueba, la señora Ríos Negrón solicitó autorización para presentar una segunda demanda enmendada con la intención de acumular como demandados a PCS y MAPFRE.

Se desprende del expediente que la señora Ríos Negrón, desde el inicio del pleito, tuvo la intención de acumular como parte a los posibles encargados de mantenimiento y, de existir, a su aseguradora. Tal intención quedó evidenciada al incluir como demandados con nombres desconocidos a "Dueño I" y "Dueño II", quienes la Peticionaria identificó como "las entidades que eran dueñas y/o tenían el control, operación, administración, **mantenimiento y/o custodia del lugar** donde ocurrió la caída **y/o eran los patronos de los empleados que crearon o permitieron la condición peligrosa** que más adelante se identifica".[3] (Énfasis nuestro). De igual manera, la Peticionaria incluyó como partes a

---

[3] Véase Apéndice de la Parte Peticionaria, a la pág. 14 (*Demanda*).

la "Aseguradora A" y "Aseguradora B", las cuales denotó como "las otras aseguradoras que habían expedido pólizas de seguro a favor de todos y cada uno de los demandados".[4]

Asimismo, quedó demostrado mediante *Minuta* que, el 18 de agosto de 2023, durante la Vista de Conferencia Inicial, la señora Ríos Negrón discutió la posibilidad de enmendar las alegaciones de la demanda para incluir en el pleito al contratista encargado de mantenimiento en el Hospital.

Al evaluar detenidamente la solicitud de enmiendas, el momento en que fue presentada y, luego de haber sopesado el posible perjuicio a la parte recurrida, colegimos que autorizar la demanda enmendada, no le ocasiona perjuicio a los Recurridos.

En vista de lo anterior, concluimos que erró el foro recurrido al declarar *No Ha Lugar* la solicitud para presentar una segunda demanda enmendada instada por la parte peticionaria.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* solicitado y se *Revoca* la *Orden* recurrida. Consecuentemente, se devuelve el caso al foro primario para que continúen los procedimientos, de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] *Íd.*