Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| LUIS A. RIVERA RODRÍGUEZ/ROSANA MUÑIZ ARILL y la SLBG compuesta por ambos **Apelante** V. CONDOMINIO *SEA VIEW*/ JUNTA DE DIRECTORES COND *SEA VIEW* y ASEGURADORA XYZ **Apelado** | KLAN202400997 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Cabo Rojo Civil. Núm. CB2021CV00609 Sobre: DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2024.

El 6 de noviembre de 2024, el Sr. Luis A. Rivera Rodríguez (señor Rivera), la Sra. Rosana Muñiz Arill (señora Muñiz) y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, la parte apelante) comparecieron ante nos mediante un recurso de *Apelación* y solicitaron la revisión de una *Sentencia Parcial* que se dictó y notificó el 21 de agosto de 2024 por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria Parcial* que presentó el Consejo de Titulares de Condominio Sea View (Sea View o apelado). En consecuencia, ordenó la desestimación, con perjuicio, de la causa de acción sobre la pérdida de ingresos.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 24 de marzo de 2022, la parte apelante presentó una *Demanda Enmendada* sobre daños y perjuicios en contra de Sea

Número Identificador

SEN2024 _____

View.[1] Mediante esta, alegó que era dueña y titular del apartamento AD-1 localizado en el condominio Sea View en el municipio de Cabo Rojo, Puerto Rico. Indicó que este bien inmueble se encontraba localizado en el primer nivel de un edificio de cinco (5) pisos y se encontraba arrendado desde julio de 2019, por un canon mensual de $1,000.00. No obstante, planteó que, para enero del año 2020, el apartamento enfrentó problemas de filtración de agua en dos de sus cuartos.

Sostuvo que, el mismo mes de enero de 2020, tan pronto tuvo conocimiento de las filtraciones por medio de su inquilina, notificó a la administración de Sea View, solicitando su intervención para la identificación del origen de las filtraciones y reparación del daño. Sin embargo, sostuvo que a causa de las filtraciones de agua que no fueron corregidas oportunamente por la Administración de Sea View, la inquilina desalojó la propiedad en el mes de junio de 2020.

Adujo que, ante la inacción de la Administración de Sea View, contrató personal experto en la materia para hacer inspecciones y realizar reparaciones para mitigar los daños. Además, indicó que realizó innumerables gestiones para que se lograra realizar la inspección con los plomeros contratados por Sea View para que estos confirmaran el origen de las filtraciones de agua. Expresó que, el 24 de junio de 2021, se llevó a cabo una inspección por un plomero donde estuvieron presentes las partes y como resultado, se determinó que el problema se debía a un factor externo de la estructura del edificio, ajeno al apartamento de los titulares, atribuible a la Administración de Sea View.

Por consiguiente, afirmó que, el 24 de agosto de 2021, se llevó a cabo una reparación del daño identificado por los plomeros, pero solo duró un mes pues en el mes de septiembre de 2021 volvieron

---

[1] Véase, págs. 7-10 del apéndice del recurso

las filtraciones de agua. Alegó que la propiedad estuvo sin inquilinos y sin generar ingresos desde el mes de julio de 2020. En consecuencia, sostuvo que el apartamento no se había podido volver a alquilar toda vez que el problema de las filtraciones subsistía, lo que ha conllevado a una pérdida de ingresos de $17,000.00 (17 meses por $1,000.00 de renta). Asimismo, indicó que las filtraciones de agua habían causado daños al interior del apartamento. Ante ello, solicitó al TPI que ordenara a Sea View realizar las reparaciones necesarias para corregir de forma definitiva las filtraciones de agua dentro un término de 30 días e impusiera una compensación por daños y perjuicios a su favor.

En respuesta, el 7 de octubre de 2022, Sea View presentó su *Contestación a Demanda Enmendada.*[2] Posteriormente, el 11 de septiembre de 2023, enmendó su contestación a la *Demanda Enmendada.*[3] En síntesis, alegó que la filtración de agua fue causada por la perforación de un tubo de desagüe pluvial a la altura del apartamento AD-2 causado por el titular del referido apartamento y que la misma fue resuelta el 24 de junio de 2021. A su vez, indicó que el apartamento AD-1 de la parte apelante estaba siendo ocupado por la madre de la señora Muñiz desde octubre del año 2020. Por lo cual, solicitó al TPI que desestimara la demanda con perjuicio.

Tras varios trámites procesales, el 11 de junio de 2024, Sea View presentó una *Solicitud de Sentencia Sumaria Parcial.*[4] En primer lugar, enumeró nueve (9) hechos que, a su juicio, no estaban en controversia. Después argumentó que, conforme a estos hechos, la prueba documental presentada y el derecho aplicable, la parte apelante carecía de legitimación activa para reclamar la pérdida de

---

[2] Id. págs. 11-14.
[3] Id. págs. 15-20.
[4] Id. págs. 56-80.

ingresos por cánones de arrendamiento. Particularmente, señaló que, el suscribiente del contrato de arrendamiento del apartamento AD-1 era IOCP Properties, LLC (IOCP) y no la parte apelante. De este modo, argumentó que le correspondía a IOCP, siendo la entidad que sufrió las alegadas pérdidas de ingresos, comparecer en el pleito y presentar su reclamo oportunamente. No obstante, aseveró que la reclamación estaba prescrita por haber transcurrido el término dispuesto por ley para presentar una acción por daños y perjuicios. Así púes, solicitó al TPI que desestimara la reclamación por pérdidas de ingresos de arrendamiento, toda vez que existían partes indispensables que no habían comparecido al pleito y dicha acción estaba prescrita por el transcurso del tiempo.

En desacuerdo, el 19 de julio de 2024, la parte apelante presentó su *Oposición a Moción Solicitando que se dicte Sentencia Sumaria Parcial.*[5] En esta, alegó que existía controversia sobre los planteamientos de Sea View en cuanto al contrato de arrendamiento. Sostuvo que, las rentas del alquiler del apartamento eran ingresos depositados en las cuentas de la parte apelante y reportados en sus planillas. Además, planteó que la intención de las partes fue suscribir un contrato de arrendamiento con la inquilina en calidad de titulares del apartamento. Por estos motivos, puntualizó que era la parte apelante la dueña registral del referido apartamento y quien tenía la facultad y capacidad jurídica para arrendarlo. Por lo cual, adujo que la solicitud de sentencia sumaria presentada por Sea View era improcedente.

Así las cosas, el 30 de julio de 2024, la parte apelada presentó su *Replica a Oposición a Moción de Sentencia Sumaria Parcial.*[6] En esta, reiteró que la IOCP era la parte arrendadora en el contrato de arrendamiento del apartamento AD-1. Añadió que, al poseer

---

[5] Id. págs. 85-115.
[6] Id. págs. 116-119.

personalidad jurídica propia, IOCP era la que tenía la legitimación activa para instar una acción sobre pérdidas de ingresos. No obstante, insistió que por su inacción la reclamación actualmente se encontraba prescrita.

Evaluados los escritos de las partes, el 21 de agosto de 2024, el TPI emitió y notificó su *Sentencia Parcial*.[7] Mediante esta, realizó las siguientes determinaciones de hechos que encontró probadas a base de la prueba presentada por Sea View:

1. El 8 de mayo de 2019 IOCP Properties, LLC, suscribió un contrato de arrendamiento con la arrendataria Elisa M. Ayala Medina para arrendar el Apartamento AD-1 del Condominio Sea View Plaza, Cabo Rojo, Puerto Rico, por el término de un (1) año.

2. En el mes de junio de 2020, la inquilina que residía en la propiedad desalojó el apartamento antes mencionado.

3. El canon de arrendamiento por la propiedad sita en el Condominio Sea View Plaza, Apartamento AD-1, Cabo Rojo, Puerto Rico era de $1,000.00 mensuales.

4. Según dispone el contrato, la arrendataria debía emitir el pago a nombre de IOCP Properties a la cuenta de esta en Oriental Bank, routing #221571415, cuenta #21489597.

5. IOCP Properties, LLC, arrendó el apartamento a título de dueño.

6. Los demandantes Luis Rivera Rodríguez y Rosana Muñiz Arill comparecieron en el contrato de arrendamiento en calidad de representantes de IOCP Properties, LLC.

7. IOCP Properties, LLC, es una compañía de responsabilidad limitada, doméstica, con fines de lucro, cuyo registro ante el Departamento de Estado es el número 308324, y la cual se encuentra activa.

8. IOCP Properties, LLC no es parte en el pleito de epígrafe.

9. El apartamento AD-1 se encuentra ocupado desde octubre de 2020 por la madre de la demandante Rosana Muñiz.

10. La pérdida de ingreso reclamada en la Demanda está relacionada con la pérdida de cánones de arrendamiento del contrato suscrito entre IOCP, Properties, LLC y Elisa M. Ayala Medina.

---

[7] Id. págs.120-129.

A base de estas determinaciones de hechos, el TPI señaló que la IOCP fue la entidad que suscribió el contrato de arrendamiento en calidad de arrendador y a título de dueño, por lo cual cualquier asunto relacionado a la pérdida de ingresos reclamado en la *Demanda* le correspondía a esta corporación. A su vez, resolvió que la prueba presentada por la parte apelante no derrotó la solicitud de sentencia sumaria. Específicamente expresó que la prueba de la parte apelante contradecía su propio testimonio bajo juramento y el contrato de arrendamiento. En cuanto a esto, el TPI expresó lo siguiente:

> Como prueba en apoyo a la moción en oposición a la moción de sentencia sumaria parcial, la parte demandante presentó unas declaraciones juradas suscritas por la Sra. Rosana Muñiz Arill, la Sra. Magali Arill Miranda, madre de la demandante Sra. Muñiz, por el Sr. Luis Rivera y por la corredora de bienes raíces que fue la intermediaria del contrato de arrendamiento de la propiedad en cuestión. La Sra. Muñiz expone en su declaración jurada que ella y su esposo suscribieron el contrato de arrendamiento con la Sra. Ayala Medina. Además, alega en la declaración jurada que el referido contrato se suscribió en su carácter personal y que los pagos los recibían a una cuenta personal. La declaración jurada de la Sra. Muñiz contradice su propio testimonio bajo juramento que surge de la toma de deposición donde admitió que IOCP Properties es quien figura como titular y arrendador en el contrato de arrendamiento y quien recibía los cánones de arrendamiento a una cuenta a nombre de dicha corporación.

> La parte demandante Rosana Muñiz admitió en la deposición bajo juramento que su señora madre ocupó la propiedad desde octubre del año 2020, no obstante, en la declaración jurada expone que se ocupó desde diciembre 2021. La corredora de bienes raíces admite en la declaración jurada que IOCP Properties es quien figura en el contrato de arrendamiento como titular del inmueble. Se desprende del contrato de arrendamiento que comparece IOCP Properties representado por Luis Rivera Rodríguez y Rosana Muñiz Arill. Es claro que los demandantes comparecieron en el contrato de arrendamiento en calidad de representantes de IOCP Properties, LLC.

> Las declaraciones juradas presentadas son del tipo que nuestro Tribunal Supremo entiende se deben descartar por ser engañosas, pues tienen el propósito de contradecir el testimonio bajo juramento anterior y así crear una controversia que impida que se pueda dictar

sentencia sumaria. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

Por otra parte, el TPI indicó que la parte apelante presentó unos estados de cuenta de una cuenta bancaria a nombre del señor Rivera. No obstante, que dichas cuentas no comprobaban depósitos referentes al canon de arrendamiento, toda vez que solo manifestaba un depósito por $1,000.00 sin describir que era en concepto de renta. Ante ello, el TPI concluyó que era la IOCP quien debió comparecer en el pleito y presentar la alegada pérdida de ingresos oportunamente. Sin embargo, puntualizó que este derecho prescribió por no haberse ejercido en tiempo. A tales efectos, acogió la solicitud de sentencia sumaria de la parte apelante y ordenó la desestimación de la causa de acción sobre la pérdida de ingresos con perjuicio.

Inconforme, el 5 de septiembre de 2024, la parte apelante presentó su reconsideración a la *Sentencia Sumaria Parcial*.[8] En esencia, alegó que ostentaba la legitimación activa para solicitar los ingresos dejados de devengar por concepto de renta. Afirmó que, la intención de la parte apelante era que el contrato de arrendamiento fuese suscrito bajo su nombre. En apoyo a esto, argumentó que la realtor que preparó el contrato reconoció que el mismo debió haber sido realizado por la parte apelante y no la IOCP en sus declaraciones juradas. A su vez, puntualizó que, la titularidad del apartamento, los depósitos de renta y reporte de ingresos de renta fueron bajo su nombre.[9]

En respuesta, el 7 de septiembre de 2024, Sea View presentó su *Oposición a Moción de Reconsideración*.[10] Alegó que resultaba claro que la parte arrendadora en el contrato fue IOCP y no la parte

---

[8] Id. págs. 131-140.
[9] Es preciso señalar, que, durante el descubrimiento de prueba, la parte apelante sometió copia de sus planillas de contribuciones sobre ingresos, pero estas contenían tachaduras en sus encasillados.
[10] Id. págs. 141-144.

apelante. Además, indicó que la parte apelante en sus declaraciones juradas presentó alegaciones que contradecían su testimonio bajo juramento que surgían de la deposición. Además, sostuvo que la parte apelante no podía alegar pérdidas de cánones de renta mientras la madre de la señora Muniz estaba haciendo uso de la propiedad.

Evaluadas las posturas de las partes, el 26 de septiembre de 2024, el TPI declaró un No Ha Lugar a la moción de reconsideración, la cual fue notificada el 2 de octubre de 2024. Aún inconforme, el 8 de noviembre de 2024, la parte apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

**Primer Error: Erró el Honorable Tribunal de Primera Instancia al determinar y resolver en su Sentencia Parcial de 21 de agosto de 2024 que fue la corporación IOCP Properties, LLC, quien suscribió un contrato de arrendamiento con la arrendataria Elisa M. Ayala Medina para arrendar el Apartamento AD-1 del Condominio Sea View Plaza, Cabo Rojo, Puerto Rico, por el término de un (1) año, y no los demandantes apelantes Luis Rivera Rodríguez y su esposa Rosana Muñiz Arill.**

**Segundo Error: Erró el Honorable Tribunal de Primera Instancia al determinar y resolver en su Sentencia Parcial de 21 de agosto de 2024 que fue la corporación IOCP Properties, LLC, la que arrendó el apartamento a título de dueño cuando de la prueba intercambiada entre las partes y expuesta ante el Tribunal de Primera Instancia indica y demuestra lo contrario, que son los demandantes apelantes quienes arrendaron a título de dueño.**

**Tercer error: Erró el Honorable Tribunal de Primera Instancia al determinar y resolver en su Sentencia Parcial de 21 de agosto de 2024 que la pérdida de ingreso reclamada en la Demanda está relacionada con la pérdida de cánones de arrendamiento del contrato suscrito entre IOCP, Properties, LLC y la inquilina y que por ello dicha corporación es parte indispensable en el pleito y con legitimidad activa para reclamar dicha perdida de ingreso reclamada en la Demanda.**

**Cuarto Error: Erró el Honorable Tribunal de Primera Instancia en su Sentencia Parcial de 21 de agosto de 2024 al no considerar la prueba vertida en el caso ante su consideración que demuestra que los planteamientos de hechos de la parte demandada-apelada están verdaderamente en controversia, incumpliendo así dicha parte con los criterios de**

**rigor sobre Sentencia Sumaria establecidos en la Regla 36 de Procedimiento Civil, por lo que no procedía el que se dictara Sentencia Parcial en contra de los demandantes-apelantes privando a estos de desfilar su prueba en un Juicio en su Fondo y que su reclamación se atendiera en sus méritos.**

**Quinto Error: Erró el Honorable Tribunal de Primera Instancia en su Sentencia Parcial de 21 de agosto de 2024 al no respetar la libertad de contratación e intención de las partes contratantes reflejadas en el contrato de arrendamiento del Apartamento AD-1 del Condominio Sea View toda vez que del mismo se refleja que son los demandantes-apelantes los que arrendaron en calidad de dueño el apartamento AD-1 del Condominio Sea View.**

Atendido el recurso, el 12 de noviembre de 2024, emitimos una *Resolución* concediendole a la parte apelada hasta el 2 de diciembre de 2024 para presentar su alegato en oposición. Oportunamente, el 20 de noviembre de 2024, Sea View presentó su *Alegato* y negó que el TPI cometiera los errores imputados por la parte apelante. A su vez, el 11 de diciembre de 2024, la parte apelante presentó una *Moción Informativa sobre anejo por añadir y en solicitud de que se aneje al índice de anejos del escrito de Apelación*.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

II.

-A-

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

Es menester destacar que, solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299. Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010).

En reiteradas ocasiones, el Tribunal Supremo ha establecido que se considera como un hecho esencial y pertinente, aquel que "puede afectar el resultado de la reclamación acorde con el derecho sustantivo aplicable". Íd., pág. 213. Dicho esto, para que proceda una moción de sentencia sumaria no tan solo se requiere que haya una inexistencia de hechos en controversia, sino que también la sentencia que dicte el foro judicial tiene que proceder conforme al derecho sustantivo aplicable.

En particular, la Regla 36.2 de Procedimiento Civil, *supra*, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Municipio de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 677 (2018).  Por el contrario, esa persona viene obligada a enfrentar la moción de su adversatario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata- Rivera v. J.F. Montalvo,* 189 DPR 414, 432 (2013). Específicamente, la Regla 36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria.

Al amparo de dicha regla, la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Asimismo, cabe destacar que, la Regla 36.5 de Procedimiento Civil, *supra,* establece que las declaraciones juradas  para sostener u oponerse a  una  moción  de  sentencia sumaria que contienen solo conclusiones, sin hechos específicos

que las apoyen, no tienen valor probatorio, por lo que son insuficientes para demostrar la existencia de lo que allí se concluye.

Según dispone el caso de *Mejías et al. v. Carrasquillo et al.,* supra, pág. 300 citando a: *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 280-281 (1990), "al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria de los cuales surjan admisiones hechas por las partes".

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra,* 186 DPR 713, 757 (2012); *Ramos Pérez v. Univisión, supra,* pág. 217. Además, no se debe adjudicar un caso sumariamente cuando existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa. Íd. pág. 219.

Ahora bien, según *Verá v. Dr. Bravo,* 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Lo anterior, debido a que "las partes no pueden añadir en apelación *exhibits,* deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el

foro apelativo". Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

**-B-**

Las corporaciones existen en virtud de una ficción jurídica instaurada a través de la Ley Núm. 164-2009, según enmendada, mejor conocida como la *Ley General de Corporaciones,* 14 LPRA sec. 3501 *et seq.* (Ley General de Corporaciones), que las faculta para realizar cualquier gestión lucrativa o sin lucro, siempre y cuando sea lícita. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank,* 193 DPR 38, 49 (2015). Dichas entidades facilitan el desarrollo de las empresas ya que poseen personalidad jurídica propia, distinta e independiente a la de sus dueños o miembros, quienes por lo general no responderán con su patrimonio por los actos de la corporación, sino

hasta el monto de su inversión. *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011) citando a: C.E. Díaz Olivo, *Corporaciones*, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 11. En este sentido, las corporaciones subsisten jurídicamente y ostentan la facultad de demandar y ser demandado bajo su nombre corporativo. Art. 2.02 de la Ley Núm. 164-2009, 14 LPRA sec. 3522. No obstante, por su naturaleza artificial, las corporaciones necesitan actuar a través de sus empleados o representantes. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, *supra*, pág. 50.

**-C-**

La Regla 16.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1 gobierna todo lo relacionado a la falta de parte indispensable en un pleito. Específicamente establece que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". Íd. Precisa señalar que, el interés común al que hace referencia la citada Regla no es cualquier interés en el pleito, sino que tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007) *Romero v. S.L.G.,* 164 DPR 721, (2005).

De manera, que una parte indispensable es aquella de la que no se puede prescindir. Sin su presencia, las cuestiones litigiosas no pueden ser adjudicadas correctamente, ya que sus derechos quedarían afectados. *Allied Mgmt. Group. v. Oriental Bank*, 204 DPR 374 (2020).

III.

En el presente caso, la parte apelante solicitó la revocación de la *Sentencia Parcial* que dictó y notificó el TPI el 21 de agosto de 2024. Específicamente, en su primer señalamiento de error, sostuvo que el TPI erró al determinar que la IOCP suscribió el contrato de

arrendamiento para arrendar el apartamento AD-1 y no así la parte apelante. Cónsono a ello, en su segundo señalamiento de error sostuvo que, la prueba que se intercambió entre las partes y que se presentó ante el TPI, demostraban que eran los apelantes los que arrendaron a título de dueño. Por otro lado, en su tercer señalamiento de error, argumentó que el TPI erró al resolver que la pérdida de ingreso que se reclamó en la *Demanda* estaba relacionada con la pérdida de cánones de arrendamiento del contrato suscrito entre la IOCP y la Sra. Elizabeth M. Ayala Medina (señora Ayala) y que, por ello, la IOCP era parte indispensable en el pleito y con legitimidad para reclamar la pérdida del ingreso solicitada en la *Demanda.*

En su cuarto señalamiento de error, sostuvo que el TPI erró al no considerar que la prueba vertida en el caso demostraba que los planteamientos hechos por la parte apelada estaban verdaderamente en controversia. Por último, en su quinto señalamiento de error, alegó que el TPI erró al no respetar la libertad de contratación de las partes en el contrato de arrendamiento. Indicó que el contrato de arrendamiento reflejaba que era la parte apelante los que arrendaron en calidad de dueño.

Por su parte, Sea View argumentó que en el contrato de arrendamiento compareció IOCP y no la parte apelante en su carácter personal. En apoyo a esto, citó el primer párrafo del contrato que disponía que el mismo fue suscrito entre IOCP, representados por el señor Rivera y la señora Muñiz, y la señora Ayala, la inquilina. Asimismo, señala que, en la cuarta página del contrato aparecía la firma del señor Rivera que lo identifica como representante de IOCP. A tal efecto, argumentó que no se podía soslayar el expreso lenguaje del contrato. De este modo, sostuvo que resultaba claro que fue la entidad jurídica, IOCP, quien compareció en el contrato de arrendamiento a título de dueño. Así pues, insistió

que era esta corporación quien tenía la legitimidad para reclamar la pérdida de ingresos por concepto de renta. No obstante, argumentó que, aún si la IOCP compareciera a presentar su reclamo por perdida de ingresos, dicha causa de acción estaba prescrita.

Previo a discutir los señalamientos de error previamente reseñados al principio de este acápite, cabe precisar que, al momento de revisar la concesión de una sentencia sumaria, nos encontramos en la misma posición que el TPI. A tono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* y con los dispuestos en *SLG Zapata-Rivera v. J.F. Montalvo,* supra. Al evaluar los escritos presentados por las partes juzgamos que, en esencia, ambas cumplieron con los referidos requisitos. Resuelto lo anterior, nos corresponde entonces evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria.

En su dictamen, el TPI realizó diez (10) determinaciones de hechos que no estaban en controversia.[11] Examinada la solicitud de sentencia sumaria junto con la prueba documental que obra en el expediente, determinamos que no existe hechos controvertidos por lo cual adoptamos las determinaciones de hechos realizadas por el TPI en su totalidad. De manera que, solo resta determinar si la parte apelante tenía legitimación activa para instar una reclamación por pérdidas de ingresos por cánones de arrendamiento dejados de devengar.

Discutiremos los señalamientos de error en conjunto por estar íntimamente relacionados entre sí. Examinado el contrato de

---

[11] Es preciso señalar que tanto el TPI como en la moción de sentencia sumaria indicó que el número de cuenta es 21489597, no obstante, según el contrato de arrendamiento el número es 21489**94**597. A su vez, el TPI y la moción expresan el nombre de la inquilina como Elisa M. Ayala Medina cuando debe de leer como **Elizabeth** M. Ayala Medina.

arrendamiento junto a la prueba que obra en expediente, resulta claro que el acuerdo se llevó a cabo entre IOCP y la señora Ayala. Según el propio Contrato de Alquiler, el primer párrafo y su primera cláusula disponen lo siguiente:

> Este contrato de arrendamiento suscrito hoy 8 de mayo de 2019 entre IOCP Properties, **representados** por el Sr. Luis Rivera y Rosanna Muñiz de ahora en adelante el Propietario y Elizabeth M. Ayala Medina, de ahora en adelante el inquilino: estipula como sigue:
>
> 1. Que el Propietario, es dueño de la siguiente propiedad:
> Cond. Sea View<br>Apt. AD1<br>Mayagüez, PR 00680.[12]

Nótese que, es evidente que la IOCP compareció en el contrato de arrendamiento **representado** por la parte apelante como titular del apartamento AD-1 y no así la parte apelante en su carácter personal. De igual forma, la clausula 4 del contrato dispuso:

> Que la compensación convenida por el arrendamiento, el INQUILINO se compromete y obliga a pagar una mensualidad de mil dólares ($1,000.00), pagadera dicha cantidad cada día 1 de cada mes natural y tendrá 5 días de gracia. De haber pago tardío o cheque devuelto, el INQUILINO se verá obligado a pagar una penalidad de un diez porciento (10%), que equivale a cien dólares ($100.00).
>
> > Se hará el pago a nombre de:
> > Al IOCP Properties
> > Oriental Bank, routing #221571415
> > Cuenta #2148994597[13]

Además, en la cuarta página del contrato donde obra la firma del señor Rivera, el encasillado se identifica como Luis Rivera IOCP Properties. Como mencionamos anteriormente, no hay duda de que la parte apelante compareció en representación de IOCP y no en su carácter personal en el contrato de alquiler.

A pesar de esto, la parte apelante argumentó que su intención era haber suscrito el contrato de arrendamiento a título de dueño.

---

[12] Id. pág. 76.
[13] Id.

No obstante, la prueba que obra en el expediente no controvierte el hecho que la IOCP fue quien suscribió el acuerdo. Los estados de cuenta bancario presentados para evidenciar que los ingresos de renta fueron depositados en la cuenta personal del señor Rivera y no la de la IOCP, solo demuestran un depósito de $1,000.00 sin describir en que concepto se reciben. Además, la Sra. Sara Juliana Vivoni, corredora de bienes raíces, indicó en su declaración jurada que ella fue quien preparó el contrato de arrendamiento y que el mismo dispone que comparece IOCP en calidad de dueño.

Mencionado lo anterior, recordemos que conforme al derecho que antecede, las corporaciones ostentan personalidad jurídica propia, distinta e independiente de las personas que las componen. *Santiago et al. v. Rodríguez et al., supra*. Por ende, tienen la facultad para demandar y ser demandados, pero por su naturaleza artificial es necesario que actúen a través de sus representantes o empleados. 14 LPRA sec. 3522; *Rivera Sanfeliz et al. v. Jta. Dir. First Bank, supra*, pág. 50. Dicho esto, IOCP es una entidad con personalidad jurídica propia y la parte que compareció en el contrato de arrendamiento. Ante ello, la IOCP era una parte indispensable en el pleito y le correspondía presentar la reclamación sobre pérdidas de ingresos por concepto de rentas, toda vez que sin su comparecencia no se podía adjudicar el caso en sus méritos. En vista de lo antes expuesto, la parte apelante no tenía legitimación activa para presentar una reclamación por pérdidas de ingresos por cánones de arrendamiento dejados de devengar.

Por todo lo cual, el TPI no cometió los errores señalados por la parte apelante, toda vez que la parte con legitimación activa no compareció en el pleito.

IV.

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

KLAN202400997                                                    19

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones