ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| UNIÓN AMERICANA DE LIBERTADES CIVILES DE PUERTO RICO, Apelada, v. EDWIN GONZÁLEZ MONTALVO en su capacidad oficial como SECRETARIO DEL DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS, representado por la HON. LOURDES LINETTE GÓMEZ TORRES, en su capacidad oficial como SECRETARIA DE JUSTICIA, Apelante. | TA2025AP00555 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan. Civil núm.: SJ2025CV08847. Sobre: *mandamus*. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 7 de enero de 2026.

Por tratarse de un documento público en posesión del Estado Libre Asociado de Puerto Rico, el cual la ley no designa como confidencial, cuyo contenido no involucra información específica o sensitiva alguna que pudiese remotamente afectar una investigación en curso, el foro apelado actuó correctamente al ordenar su entrega al amparo de los términos de la *Ley de transparencia y procedimiento expedito para el acceso a la información pública*, Ley Núm. 141-2019, según enmendada, 3 LPRA sec. 9911-992. De hecho, el contenido del documento ya fue revelado públicamente por las agencias federales y locales pertinentes. Como discutiremos más adelante, el Departamento de Transportación y Obras Públicas (DTOP), el Servicio de Control de Inmigración y Aduanas (ICE, por sus siglas en inglés) y la Oficina de Investigaciones de Seguridad Nacional (HSI) confirmaron a la prensa la existencia del requerimiento, la

información requerida a través del mismo y el hecho de que se había cumplido con lo solicitado en la *subpoena duces tecum*.

I

El 1 de octubre de 2025, la Unión Americana de Libertades Civiles de Puerto Rico (ACLU, por sus siglas en inglés) presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una petición de *mandamus* al amparo de los Artículos 649 al 661 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421-3433, y la Regla 54 de las de Procedimiento Civil, 32 LPRA Ap. V[1].

En síntesis, alegó que, conforme a la *Ley de transparencia y procedimiento expedito para el acceso a la información pública*, el 10 de junio de 2025, había formalizado una petición de documentos al Departamento de Transportación y Obras Públicas (DTOP). No obstante, el 27 de junio de 2025, la agencia respondió al requerimiento solo parcialmente u objetó su producción a base de meras generalidades[2].

---

[1] *Véase*, apéndice del recurso, entrada 1, *Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones* (SUMAC TA).

[2] En particular, solicitó la siguiente información:

> 1. Toda Guía Manual, Órdenes Administrativas, Órdenes Generales, Órdenes Especiales, Protocolos, Reglamentos Internos, y/o Externos de su agencia para evaluar la procedencia y cumplimiento de cada petición de requerimiento de información (*subpoena duces tecum* y orden judicial) emitidas a su agencia para evaluar la validez de toda petición por parte de cualquier agencia del gobierno de Puerto Rico y toda agencia federal.
>
> 2. **Copia de todo requerimiento de información (*subpoena duces tecum*) emitido por el Department of Homeland Security (DHS), y/o cualquiera de sus agencias, inclusive: Inmigration and Customs Enforcement (ICE), Customs and Border Protection (CBP), entre otras, desde el 20 de enero de 2025, a la fecha de hoy**.
>
> 3. Copia de cualquier memorándum legal de su agencia donde se documente la evaluación de la procedencia de cada uno de los requerimientos de información (*subpoena duces tecum*), identificados anteriormente.
>
> 4. Copia de cualquier comunicación entre la agencia con cualquier otra agencia de Puerto Rico, entre ellas, el Departamento de Justicia, Departamento de Seguridad Pública, entre otros, en la que se discuta cada uno de los requerimientos de información, *subpoena duces tecum*.
>
> 5. **Copia de toda la información entregada por su agencia para cumplir con el requerimiento de información (*subpoena duces tecum*)**.
>
> 6. Copia de los "acuerdos de colaboración" entre su agencia con cualquier agencia federal, entre ellas Department of Homeland Security, ICE, CBP, entre otros, para suplir cualquier información.

*Véase*, apéndice del recurso, entrada 1, *exhibit* 1, en SUMAC TA. (Énfasis nuestro).

Subrayó que, en cuanto a los requerimientos 2 y 5, el DTOP denegó su divulgación por presuntamente tratarse de documentos que no eran públicos.

En lo pertinente, el 14 de octubre de 2025, el DTOP presentó una moción de desestimación[3]. Arguyó que debía desestimarse el recurso, ya que había provisto la información de naturaleza pública solicitada. En cuanto a los requerimientos objetados, respecto al número 2, argumentó que las *subpoenas* administrativas gozaban de confidencialidad al **incluir una instrucción específica de que divulgar dicha orden de entrega de información podría obstaculizar una investigación en curso** y, por lo tanto, **interferir con la aplicación de una ley federal**.

Sobre el requerimiento número 5, el DTOP argumentó que, además de resultar amplio y vago, el DTOP no tenía la obligación de proveer la información de sus registros a un ente privado, como la ACLU, por tratarse de información recopilada por la agencia, que incluía datos de carácter personal, que no estaban cobijados por el derecho de acceso a la información pública.

El 17 de octubre de 2025, la ACLU se opuso a la solicitud de desestimación[4] y adujo que la única información que el DTOP había entregado como parte del requerimiento de información fue un memorando del 2021, intitulado *Trámite de órdenes y subpoenas emitidas por el Tribunal y/o Fiscalía*[5].

En cuanto a la posición del DTOP de que estaba impedido de divulgar la información solicitada en los requerimientos 2 y 5, por tratarse de documentos confidenciales o privilegiados, resaltó que, más allá de mencionar investigaciones en curso, que no fueron detalladas y que de por sí no constituían justificación suficiente para negarse a producir lo solicitado, **la agencia no citó disposición legal alguna en la que**

---

[3] *Véase*, apéndice del recurso, entrada 9, SUMAC TA.

[4] *Íd.*, entrada 19, SUMAC TA.

[5] *Íd.* entrada 1, *exhibit* 1, SUMAC TA.

**expresamente se derrotara la presunción de publicidad de los documentos solicitados**.

El 6 de noviembre de 2025, el Tribunal de Primera Instancia citó y celebró una vista argumentativa.

Al día siguiente, el foro apelado emitió su *Sentencia*, en la que concluyó que la información solicitada por la ACLU era susceptible de divulgación, por lo que ordenó al DTOP producir o brindar acceso a la ACLU a:

> 1. Todo requerimiento de información (*subpoena duces tecum*) emitido por el Department of Homeland Security (DHS), y/o cualquiera de sus agencias, inclusive: Immigration and Customs Enforcement (ICE), Customs and Border Protection (CBP), entre otras, desde el 20 de enero de 2025 a la fecha de hoy.
>
> 2. Copia de toda la información entregada por su agencia para cumplir con el requerimiento de información (subpoena duces tecum).

Lo anterior, **sujeto a que se salvaguardara la divulgación de información que pudiera permitir la identificación de las personas cuyos expedientes fueron divulgados a la agencia federal**.

Inconforme con la referida orden, el 14 de noviembre de 2025, el DTOP presentó una moción de reconsideración e interrumpió el término para recurrir ante nos[6].

En la misma fecha, la ACLU solicitó la imposición de desacato contra la agencia por el presunto incumplimiento con la sentencia objeto de controversia[7]. Al día siguiente, 15 de noviembre de 2025, la ACLU también se opuso a la solicitud de reconsideración[8].

Sometida la controversia, el 17 de noviembre de 2025, el foro primario notificó a las partes litigantes la resolución en la que declaró sin lugar la moción de reconsideración y, además, emitió una orden en la que

---

[6] *Véase*, apéndice del recurso, entrada 33, SUMAC TA. En su moción de reconsideración, el Estado, por primera vez, invocó como defensa la falta de parte indispensable. En particular, señaló que eran los intereses de las agencias federales los que se podrían afectar con la divulgación del contenido de la *subpoena*. Por tanto, arguyó que eran estas las llamadas a defender sus derechos y preservar su investigación.

[7] *Véase*, apéndice del recurso, entrada 32, SUMAC TA

[8] *Íd.*, entrada 36, SUMAC TA.

concedió al DTOP un plazo final de cinco (5) días para cumplir con su

*Sentencia*[9].

Aún inconforme, el DTOP, por conducto de la Oficina del Procurador

General, compareció ante este foro apelativo el 17 de noviembre de 2025[10],

y formuló los siguientes señalamientos de error:

> Erró en derecho y abusó de su discreción el Tribunal de Primera Instancia al expedir un extraordinario auto de *mandamus* para compeler al Gobierno de Puerto Rico a divulgar el contenido de una *subpoena duces tecum* que fue generada por el DHS, aun cuando el DTOP no tiene un deber ministerial de divulgar esa información, ni le corresponde en derecho probar *en este caso* la existencia de un interés apremiante para preservar su confidencialidad, pues la investigación la realiza una agencia del gobierno federal sobre la cual el Tribunal de Primera Instancia no tiene jurisdicción.

> Erró en derecho y abusó de su discreción el Tribunal de Primera Instancia al dictar la *Sentencia* apelada, como parte de un procedimiento judicial del cual no formó parte el organismo federal con interés en la información cuya divulgación se ordenó, el DHS, siendo parte indispensable, por ser quien tiene el interés en preservar la confidencialidad de esos datos, con el fin de no afectar la integridad y pureza de una investigación en curso de ese ente federal.

> Erró en derecho y abusó de su discreción el Tribunal de Primera Instancia al expedir un extraordinario auto de *mandamus* para compeler al Gobierno de Puerto Rico a divulgar el contenido de una *subpoena duces tecum* que fue generada por el DHS, como parte de una investigación que realiza esa agencia federal, y publicar los documentos producidos a esa agencia para cumplir con su requerimiento de información, a pesar de que la apelada cuenta con un remedio completo, específico y adecuado en ley para canalizar su reclamo ante el foro con jurisdicción para ello.

> Erró en derecho y abusó de su discreción el Tribunal de Primera Instancia al expedir un extraordinario auto de *mandamus* para compeler al Gobierno de Puerto Rico a divulgar el contenido de esa *subpoena duces tecum* y los documentos producidos para cumplirla, a pesar de que, en el balance de intereses, la expedición del auto ocasiona un impacto adverso al interés público y constituye una intromisión indebida con las funciones del Poder Ejecutivo federal y estatal.

Por su parte, y conforme le fuera ordenado, el 8 de diciembre de

2025, la ACLU presentó su alegato en oposición a la apelación.

---

[9] *Véase*, apéndice del recurso, entradas 37 y 38, SUMAC TA.

[10] En esa misma fecha, el DTOP solicitó, además, que este Tribunal ordenase la paralización de los procedimientos ante el foro primario, en tanto se dilucidaba la controversia. El 17 de noviembre de 2025, emitimos la orden solicitada y decretamos la paralización de los procedimientos.

A la luz de que la *subpoena* en controversia no había sido inspeccionada en cámara por el foro primario, el 12 de diciembre de 2025, ordenamos al DTOP producir el original de la *subpoena* y cualquier documento complementario a la *subpoena*, que le hubiera sido notificado por la agencia federal concernida.

El 15 de diciembre de 2025, el DTOP presentó físicamente y en sobre debidamente sellado el original de la *subpoena* para su exclusiva entrega a, e inspección por, este Panel.

Con el beneficio de la comparecencia de las partes litigantes y la revisión de la *subpoena duces tecum*, resolvemos.

II

A

En Puerto Rico, el derecho de acceso a la información es reconocido como un derecho humano y constitucional de rango fundamental. *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 207 (2021); *Bhatia Gautier v. Rosselló Nevares*, 199 DPR 59, 80 (2017); *Trans Ad PR v. Junta Subastas*, 174 DPR 56, 67 (2008); *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 590 (2007); *Ortiz v. Dir. Adm. Tribunales*, 152 DPR 161, 175 (2000); *Soto v. Srio. Justicia*, 112 DPR 477, 485 (1982). Este derecho, esencial para la sana función de una sociedad democrática, emana de los derechos de libertad de expresión, prensa y asociación expresamente dispuestos en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico. Const. PR, Art. II, Sec. 4.

Dada la importancia de este derecho, "[e]l Estado […] no puede negar caprichosamente y sin justificación aparente la información recopilada en su gestión pública". *Soto v. Srio de Justicia* 112 DPR, a la pág. 489 (bastardillas omitidas); *Colón Cabrera v. Caribbean Petroleum*, 170 DPR, a la pág. 590; *Santiago v. Bobb y El Mundo*, 117 DPR 153,158 (1986).

En lo pertinente, el Art. 409 del Código de Enjuiciamiento Civil, 32 LPRA sec. 1781, establece que, "[t]odo ciudadano tiene derecho a

inspeccionar y sacar copia de cualquier documento público de Puerto Rico, **salvo lo expresamente dispuesto en contrario por la ley**". (Énfasis nuestro).

Con el fin de viabilizar y organizar el acceso a la información en poder del Estado, el legislador aprobó la *Ley de transparencia y procedimiento expedito para el acceso a la información pública*, Ley Núm. 141-2019, según enmendada, 3 LPRA sec. 9911-9923 (Ley Núm. 141). En ella, se establece como política pública que:

> 1. La información y documentación que produce el gobierno **se presume pública y accesible a todas las personas por igual**.
>
> 2. La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.
>
> 3. El derecho constitucional de acceso a la información requiere la transparencia gubernamental.
>
> 4. **Toda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno, aunque se encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa.**
>
> 5. El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental.
>
> 6. El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.
>
> 7. Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.
>
> 8. El Gobierno de Puerto Rico establece en la presente Ley una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y de los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación pública de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros.

Art. 3, Ley Núm. 141, 3 LPRA sec. 9913. (Énfasis nuestro).

De igual forma, y en lo atinente a la controversia que atendemos, el referido estatuto dispone que cualquier persona a la cual una entidad gubernamental le haya notificado su determinación de no entregar la información solicitada o que no haya hecho entrega de la información

dentro del término establecido o su prórroga, tendrá derecho a presentar, por derecho propio o a través de su representación legal, ante la sala del Tribunal de Primera Instancia de la Región Judicial de San Juan, un recurso especial de acceso a información pública. Art. 9 de la Ley Núm. 141, 3 LPRA sec. 9919.

El estatuto también aclara que **ello no supone la exclusión de otros derechos y procedimientos pertenecientes a las personas solicitantes de información pública y no mencionados específicamente, como lo es el recurso de *mandamus* tradicional**. Art. 12, 3 LPRA sec. 9922.

La Ley Núm. 141 también dispone que la interpretación de sus disposiciones deberá ser de la forma más liberal y beneficiosa para la persona solicitante de información pública y, en caso de conflicto entre las disposiciones de esta y la de cualquier otra legislación, prevalecerá aquella que resulte más favorable para la persona solicitante de información y documentación pública. *Íd.*

De otra parte, el Tribunal Supremo de Puerto Rico ha reconocido las instancias particulares en la que el Estado puede reclamar que se preserve la confidencialidad de cierta información pública. Así, ha establecido que para que un reclamo de confidencialidad triunfe, **el Estado no puede descansar en meras generalizaciones, sino que tiene el deber ineludible de probar de forma precisa e inequívoca** la aplicabilidad de alguna de las siguientes excepciones:

(1) que una ley así lo declara;

(2) que la comunicación está protegida por algún privilegio evidenciario;

(3) que la divulgación de la información puede lesionar derechos fundamentales de terceros;

(4) que se trate de un confidente, según la Regla 515 de Evidencia de 2009 (32 LPRA Ap. VI), o

(5) que sea información oficial conforme a la Regla 514 de Evidencia de 2009 (32 LPRA Ap. VI)

*Kilómetro 0 v. Pesquera López et al.*, 207 DPR, a la pág. 210.

Inclusive, el Tribunal Supremo ha dispuesto que aquellas restricciones que el Estado imponga en el acceso a la información deben satisfacer los criterios de un **escrutinio estricto**. *Kilómetro 0 v. Pesquera López et al.*, 207 DPR, a la pág. 210. Es decir, que al momento de invocar alguna de las excepciones precitadas, el Estado no puede negar el acceso a la información pública de forma caprichosa o arbitraria, sino que, cuando el Estado reclame la confidencialidad de algún documento público, este "tiene la carga de probar que satisface cualquiera de las excepciones antes enumeradas". *Íd.* Por tanto, el hecho del Estado negarse a divulgar información pública debe estar fundamentado y justificado. *Íd.* Ello exige a los tribunales un grado mayor de suspicacia cuando se trate de conceder cualquier pedido de confidencialidad del Estado.

B

El auto de *mandamus* es un recurso altamente privilegiado y discrecional que se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. *AMPR v. Srio. Educación, E.L.A*, 178 DPR 253, 263 (2010).

El *mandamus* está concebido para obligar a cumplir un acto que la ley particularmente ordena como un deber resultante de un empleo, cargo o función pública, **cuando este deber no admite discreción en su ejercicio, sino que es ministerial**. *Íd.* Véase, además, 32 LPRA sec. 3422; *Espina v. Calderón*, 75 DPR 76, 84 (1974).

A su vez, la Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, dispone que el auto de *mandamus*, fuere perentorio o alternativo, podrá obtenerse mediante la presentación de una solicitud jurada a esos efectos. Así mismo aclara que, cuando se solicite dicho remedio y el derecho a exigir la inmediata ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo, el tribunal podrá ordenar perentoriamente la concesión del remedio; de otro modo, ordenará que se presente una contestación a la demanda.

De prosperar la solicitud de *mandamus*, el tribunal celebrará una vista, en la cual recibirá prueba, si resultare necesario, y dictará su decisión prontamente. Finalmente, la Regla 54 de Procedimiento Civil establece que se obtendrá el cumplimiento de las órdenes dictadas por el tribunal del mismo modo en que se exige el cumplimiento de cualquier otra orden.

En cuanto a los requisitos procesales del *mandamus*, el Tribunal Supremo de Puerto Rico ha establecido que, salvo contadas excepciones, para que proceda el recurso, se requiere que la parte peticionaria demuestre que hizo un requerimiento previo y que este no fue debidamente atendido por el demandado. *Romero Lugo v. Cruz Soto*, 205 DPR 972, 985 (2020). De igual forma, ha reiterado que no procede expedir un recurso de *mandamus* cuando la parte que lo solicita tiene disponible un recurso adecuado y eficaz en el curso ordinario de la ley. Lo anterior, de conformidad al Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423.

Finalmente, al evaluar si procede conceder este recurso, el Tribunal Supremo de Puerto Rico ha dispuesto que los tribunales considerarán el impacto que podría tener sobre los intereses públicos involucrados, la Rama Ejecutiva y los derechos de terceros. *Romero Lugo v. Cruz Soto*, 205 DPR, a la pág. 985. **Ha afirmado, además, que, entre esos intereses, tiene más peso el impacto posible al interés público**. *Íd.*

C

Sobre el alcance de la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, la cual gobierna todo lo relacionado a la acumulación de parte indispensable, el Tribunal Supremo de Puerto Rico ha señalado que este precepto procesal forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley. *López García v. López García*, 200 DPR 50, 63 (2018).

En lo pertinente, esta regla parte de dos principios fundamentales, a saber: (1) la protección constitucional que impide que una persona sea

privada de la libertad o de su propiedad sin un debido proceso de ley, y (2) la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. *Íd.*, a la pág. 64. A su vez, debe apuntarse que no se trata de cualquier interés sobre un pleito, sino de un interés de tal orden que impida la confección de un derecho adecuado sin afectar o destruir radicalmente los derechos de esa parte. *Íd.* Véase, además, *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005). De igual forma, al interpretar a qué se refiere el "interés común" al que hace referencia la Regla 16.1 de Procedimiento Civil, el Tribunal Supremo ha aclarado que no se trata de cualquier interés en el pleito, sino que tiene que ser real e inmediato, y no puede tratarse de meras especulaciones o de un interés futuro. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).

También, ha establecido que, en la interpretación de esta regla, se requiere una evaluación individual a la luz de las circunstancias particulares que se presenten, y no de una fórmula rígida para determinar su aplicación. *Romero v. S.L.G. Reyes*, 164 DPR, a la pág. 732.

Cónsono con lo anterior, en nuestro ordenamiento jurídico se ha destacado que la determinación final de si una parte debe o no acumularse exige una evaluación jurídica de varios factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Cuando en un pleito las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que puedan resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular. No es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia. *López García v. López García*, 200 DPR, a la pág. 64-65.

Al final, lo fundamental es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes sin

afectar los intereses de la parte ausente. *Pérez Rosa v. Morales Rosado*, 172 DPR, a la pág. 223.

III

La contención principal del DTOP está fundamentada en su alegación de que el Tribunal de Primera Instancia erró al expedir el auto de *mandamus* para compeler a esa agencia del Estado a divulgar el contenido de una *subpoena duces tecum* generada por la Oficina de Investigaciones de Seguridad Nacional (HSI) o el Servicio de Inmigración y Control de Aduanas (ICE), y los documentos relacionados al referido requerimiento.

Arguye que se trata de información de carácter confidencial, que no puede revelar sin la comparecencia de la agencia federal que la requirió y a la cual tilda de parte indispensable en el pleito. Además, plantea que, en virtud de lo anterior, y de que la ACLU cuenta con un remedio completo, específico y adecuado en ley para canalizar su reclamo ante el foro federal al amparo del estatuto conocido como el *Freedom of Information Act* (FOIA), 5 USC sec. 552, este foro carece de jurisdicción.

Al respecto, afirma que el Tribunal de Primera Instancia transfirió indebidamente al gobierno de Puerto Rico la carga de probar la existencia de un interés apremiante en evitar la divulgación de una investigación en curso, aun cuando al ente al que le compete esa obligación es el gobierno de los Estados Unidos, que no es parte del pleito y sobre el cual el foro *a quo* no tiene jurisdicción. Sostiene que el DTOP comparece como demandado, a pesar de ser un tercero al cual las autoridades federales le dirigieron el requerimiento de información objeto de controversia como parte de una pesquisa en curso.

Añade que, contrario a lo resuelto en la sentencia apelada, la controversia planteada no puede ser resuelta mediante el análisis constitucional aplicable a los reclamos sobre el derecho de acceso a la información pública generada o recopilada por el gobierno de Puerto Rico como parte de sus propias funciones investigativas. Ello, dado a que la *subpoena duces tecum* fue dirigida al gobierno local por una agencia de

seguridad pública del gobierno de los Estados Unidos, como parte de una investigación que conduce una de sus agencias. Por tanto, concluye que es la agencia de seguridad pública del gobierno de los Estados Unidos el ente con el interés en preservar la confidencialidad de la información altamente sensitiva relacionada con su requerimiento, tal como surge de la referida *subpoena*.

Añade que, de las alegaciones de la demanda, surge que los datos solicitados incluyen información sobre la identificación de personas, lo cual implica que su publicación podría afectar la integridad de la investigación y sus resultados.

Sostiene que no existe un deber ministerial del gobierno de Puerto Rico de divulgar la información que dicha agencia federal le requirió proveer. Entonces, puntualiza que en ese requerimiento del gobierno federal al de Puerto Rico se incluyó una **advertencia expresa** de que al segundo le estaba prohibido - por tiempo indefinido - divulgar tanto la existencia de dicha *subpoena*, como su contenido, para así no interferir indebidamente con una investigación federal en proceso. En cuanto a ello, expresa que: "[d]e más está señalar que si está prohibido divulgar la existencia de la *subpoena* y su contenido, mucho menos puede el DTOP divulgar los documentos que fueron provistos al DHS para cumplir con dicho requerimiento."

Por su parte, en cuanto al reclamo de parte indispensable, la ACLU arguye que, en virtud de la Ley Núm. 141, las únicas partes indispensables en un caso de acceso a información son el peticionario, en este caso, la ACLU, y el funcionario custodio de los documentos públicos que se solicitan, representado por el Departamento de Justicia.

En cuanto al remedio adecuado, añade que la Ley Núm. 141, en su Art. 12, 3 LPRA sec. 9922, autoriza expresamente la utilización del recurso de *mandamus* frente a las agencias públicas del Estado Libre Asociado de Puerto Rico, cuando estas se niegan a cumplir con el deber de dar acceso a los documentos públicos que se solicitan, por lo cual el recurso de

*mandamus* sigue siendo el recurso adecuado en derecho para exigir el acceso a la información en los tribunales del Estado Libre Asociado de Puerto Rico.

Como cuestión de umbral, resaltamos que no conocemos, ni la apelante ha señalado, la existencia de estatuto o reglamentación alguna, federal o local, que le prohíba, a quien recibe una *subpoena* federal, divulgar el mismo a terceras personas. Un examen del contenido de la *subpoena* objeto de este caso únicamente revela que el emisor "solicita" (*requests*) a la parte que no lo divulgue, mas no se cita autoridad alguna en apoyo a dicha solicitud, por lo cual la misma no puede tener el alcance de una prohibición; mucho menos, una prohibición válida.

Más importante aún, examinado el contenido de la *subpoena*, concluimos, contrario a lo planteado por la parte apelante, que no estamos ante un documento cuya divulgación pueda afectar de forma alguna el curso de una investigación. Al respecto, resaltamos que la parte apelante falló completamente en explicar, de manera concreta y específica, cómo la divulgación de la *subpoena* podría afectar de algún modo las operaciones ordinarias de seguridad de las agencias locales y federales concernidas.

De hecho, su divulgación únicamente confirmaría lo que ya las autoridades pertinentes han revelado públicamente, a decir: que el gobierno federal solicitó a las autoridades locales la información sobre los inmigrantes sin estatus definido, que habían solicitado la expedición de una licencia de conducir al DTOP.

Desde el **2 de junio de 2025**, previo a que se instara cualquier acción judicial o extrajudicial a esos efectos, la agente especial a cargo de la Oficina de Investigaciones de Seguridad Nacional (HSI) en la Isla, señora Rebecca C. González-Ramos, había confirmado que el HSI había solicitado la lista de los inmigrantes sin estatus definido a finales de enero, y que había comenzado a recibir los datos "entre febrero y marzo" de 2025. La señora González-Ramos concedió una entrevista a la *National Public*

*Radio* (NPR), en su oficina de San Juan. En el artículo publicado[11], se recoge tanto sus expresiones al respecto, como las de un portavoz del Servicio de Inmigración y Control de Aduanas (ICE), de la siguiente manera:

.    .    .    .    .    .    .    .    .

**She says they've asked Puerto Rico's department of motor vehicles to hand over the names and addresses of the roughly 6,000 people who got licenses under an immigrant-friendly law that extended driving privileges to people without legal status. (The Puerto Rican government and ICE have confirmed that this information has been handed over).**

.    .    .    .    .    .    .    .    .

*ICE said it requested the list in January via subpoena, and Puerto Rico's government said it turned it over that same month. "The list is currently being assessed by our intelligence division," Samuel Sánchez, an ICE spokesman, said in an email.*

.    .    .    .    .    .    .    .    .

*Véase*, A. Florido, *Raids and revenge tips: Inside ICE's Puerto Rico deportation operation,* 2 de junio de 2025, https://www.npr.org/2025/06/02/nx-s1-5419588/findingeverydeportable-immigrant-inside-ices-puerto-rico-operation (última visita 18 de diciembre de 2025). (Énfasis nuestro).

De otra parte, el DTOP reveló al periódico *El Nuevo Día* que su división legal respondió a una *subpoena* debidamente emitida por una autoridad competente, relacionada con el sistema de licencias de conducir. Ciertamente, ello evidencia que ambas agencias han confirmado y revelado que el DTOP llevaba, a junio de 2025, varios meses compartiéndole al ICE datos sobre miles de conductores sin estatus migratorio definido en Puerto Rico[12].

---

[11] Nótese que la Regla 201, en sus incisos B (1) y (2), y (E) de las de Evidencia, 32 LPRA Ap. VI, autoriza a este Tribunal a tomar conocimiento judicial de estos artículos periodísticos.

[12] *Véase*, A, Díaz Tirado, *ICE y DTOP confirman intercambio de información sobre conductores inmigrantes en Puerto Rico*, 4 de junio de 2025, https://www.elnuevodia.com/noticias/gobierno/notas/ice-y-dtop-confirmanintercambio-de-informacion-sobre-conductores-inmigrantes-en-puerto-rico/ (última visita 18 de diciembre de 2024). En cuanto al propósito del requerimiento, el artículo expresa que:

La agencia federal señaló, en tanto, que **"el propósito" de la información requerida "es corroborar la información con la lista de órdenes finales de deportación e identificar cualquier individuo que esté presente en Estados Unidos sin estatus migratorio con un récord criminal activo".**

*Íd.* (Énfasis nuestro).

Colegimos que no es razonable sostener un reclamo de confidencialidad respecto a la *subpoena duces tecum* cuando desde hacía varios meses que las propias agencias federales y locales habían revelado públicamente la existencia de la *subpoena*, su objetivo y el cumplimiento del DTOP con esta.

Respecto a la información relacionada a la *subpoena,* **resaltamos que el Tribunal de Primera Instancia condicionó su orden de producción a que se salvaguardara la divulgación de información que pudiera permitir la identificación de las personas cuyos expedientes habían sido divulgados a la agencia federal**.

En segundo lugar, a la luz de las circunstancias planteadas en este recurso, concluimos que el planteamiento de la parte apelante sobre la falta de parte indispensable carece de méritos. Reiteramos que las propias agencias federales concernidas han revelado el contenido presuntamente confidencial de la *subpoena* notificada al DTOP, quien es el custodio de unos documentos que acarrean una presunción de publicidad, que no pudo ser rebatida por el DTOP.

Tal cual discutido, al evaluar la falta de una parte indispensable, no existe una fórmula rígida para determinar su aplicación, sino que lo imprescindible es que se pueda conceder un remedio final y completo a las partes litigantes presentes en el pleito, sin afectar los intereses de la parte ausente. En ese sentido, coincidimos con la parte apelada en que, en esta ocasión, no hay un interés de tal magnitud que impida la confección de un derecho adecuado.

Llamamos la atención a que la parte apelante, al reiterar esa postura, descansó en el supuesto de que correspondía al gobierno de los Estados Unidos de América reclamar la confidencialidad de la *subponea duces tecum* y sus derivados, o evidenciar de forma precisa e inequívoca la existencia de alguna de las excepciones establecidas en nuestro ordenamiento jurídico. Adviértase, además, que, en lo que respecta a este análisis, el DTOP, a pesar de hacer referencia al impacto adverso al interés

público que podría generar tener que revelar la información requerida prefirió no nombrarlo, ni abundar en lo presuntos efectos perjudiciales que podría ocasionar la expedición del *mandamus.*

Por tanto, realizado el balance de intereses, a base del análisis de la totalidad de las circunstancias, - sin perder de vista que venimos llamados a realizar el mismo, de forma estricta, a favor del reclamante de la solicitud y en contra del privilegio gubernamental - resolvemos que el DTOP no logró demostrar la existencia de un interés apremiante de mayor jerarquía que los valores protegidos por el derecho ciudadano a la información. Consecuentemente, determinamos que la *subponea* objeto del requerimiento de información presentado ante el DTOP por la ACLU es un documento público sujeto a divulgación.

Reiteramos que los tribunales estamos llamados a ser cautelosos al conceder cualquier pedido de confidencialidad del Estado, y que es el propio gobierno al que le corresponde probar inequívocamente la aplicabilidad de cualesquiera de las excepciones, y no descansar en meras generalizaciones. En ese sentido, sostenemos que la opacidad en los asuntos públicos debe tratarse con sospecha, y limitarse, como excepción, a asuntos de envergadura.

IV

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada. No obstante, resolvemos que la parte apelante deberá cumplir con la referida *Sentencia* una vez la misma advenga final y firme, por lo cual se mantiene la paralización de su ejecución hasta dicho momento.

Por último, ordenamos a la Secretaría de este Tribunal de Apelaciones a devolver a la parte apelante, por conducto de la Oficina del Procurador General, el original de la *subpoena duces tecum*, debidamente sellada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones